UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 16-62506-CIV-MORENO**

FREDERICK SIEGMUND,

       Plaintiff,

vs.

XUELIAN BIAN, WEI GUAN, SIDLEY
AUSTIN LLP, SHANGHAI YINLING
ASSET MANAGEMENT, CO., LTD.,
LEADING FIRST CAPITAL LIMITED, and
LEADING WORLD CORPORATION,

       Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART SIDLEY AUSTIN'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

### I. INTRODUCTION

This is a securities class action alleging violations of state and federal law in connection with Linkwell Corporation's 2014 go-private merger ("Freeze-Out Merger"). Frederick Siegmund—the Class Representative—argues that Defendants engaged in a deceptive scheme designed to help two Linkwell Directors avoid liability for prior self-dealing and fraudulently deprive Linkwell shareholders of their stock for less than fair value. Siegmund's First Amended Complaint names six Defendants and includes the following four counts: (I) violation of Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5; (II) breach of fiduciary duty; (III) aiding and abetting breach of fiduciary duty; and (IV) civil conspiracy.

Defendant Sidley Austen LLP—named in Counts I, III, and IV—filed a motion to dismiss Siegmund's claims. First, Sidley contends that Siegmund has failed to state a claim for securities fraud under Rule 10b-5. Second, Sidley argues that this Court lacks personal

jurisdiction over Sidley on Siegmund's state law claims in Counts III and IV. Third, Sidley maintains that even if the Court has jurisdiction, Counts III and IV fail to state claims for relief.

With respect to Count I, the Court agrees that Siegmund has failed to state a claim under Section 10(b) of the Exchange Act. Accordingly, Sidley's motion to dismiss Count I *with prejudice* is GRANTED. As for Counts III and IV, the Court has personal jurisdiction and finds that Siegmund stated a valid claim for relief on both Counts. Therefore, Sidley's motions to dismiss Counts III and IV for lack of personal jurisdiction and failure to state a claim are DENIED.

## II. BACKGROUND

### A. Plaintiff

#### 1. Frederick Siegmund (Class Representative)

Frederick Siegmund is the named plaintiff bringing this suit individually and on behalf of all similarly situated "street-name" shareholders of Linkwell Corporation. He is a citizen of the State of New York. According to the Complaint, Siegmund owned Linkwell shares throughout the relevant time period. Those shares were cancelled from his brokerage account on November 6, 2014 following the Freeze-Out Merger. Siegmund claims that neither he nor his broker received any information concerning the Freeze-Out Merger. He was not provided with the merger agreement, proxy statement, or notice of the shareholders' meeting to vote on the transaction. Finally, he alleges that he did not receive notice of his statutory appraisal rights or any other rights in connection with the Freeze-Out Merger.

### B. Defendants

#### 1. Sidley Austin LLP

Sidley Austin is an international law firm operating as a limited liability partnership. Sidley maintains its headquarters in Chicago, IL and has offices in 20 cities worldwide.

## 2. Xuelian Bian

Xuelian Bian is a Chinese Citizen and former controlling shareholder[1] of Linkwell. He became a controlling shareholder in May 2005 and remained a controlling shareholder of Linkwell at all relevant times. Siegmund alleges that as an Officer and Director of Linkwell, Xuelian engaged in and authorized the misconduct alleged in the Amended Complaint. Siegmund also asserts that Xuelian had the power to control the contents of Linkwell's public statements to the financial marketplace as well as access to adverse non-public information about the company. Seigmund contends that Xuelian therefore had an obligation to promptly and accurately disclose such adverse facts to the company's shareholders and the financial markets.

Xuelian also maintains the following positions: (i) Chief Executive Officer and Director of Linkwell Tech since its inception in 2004; (ii) General Manager of Likang Disinfectant since 1993; (iii) Executive Director and controlling shareholder of Zhongyou Pharmaceutical; (iv) Co-Owner of Linkwell International (with Wei); and (v) Owner of 30% of the equity of Zhongyou (Shanghai) Technology Development Company Limited.

## 3. Wei Guan

Wei Guan is a Chinese Citizen and former controlling shareholder[2] of Linkwell. He became a controlling shareholder in May 2005 and remained a controlling shareholder of Linkwell at all relevant times. Siegmund alleges that as an Officer and Director of Linkwell, Wei engaged in and authorized the misconduct alleged in the Amended Complaint. Siegmund also asserts that Wei had the power to control the contents of Linkwell's public statements to the financial marketplace as well as access to adverse non-public information about the company. Seigmund contends that Wei therefore had an obligation to promptly and accurately disclose such adverse facts to the company's shareholders and the financial markets.

---

[1] Although Siegmund describes Xuelian Bian and Wei Guan as controlling shareholders, he does not indicate what percentage of Linkwell's outstanding shares each of them owned individually. He alleges that together they owned 43% of Linkwell's outstanding shares and controlled "more than 60% of Linkwell's stock." (Am. Compl. ¶ 82.)

[2] *See supra* note 1.

Wei also maintains the following positions: (i) Vice President of Linkwell Tech since its inception in June 2004; (ii) Vice General Manager of Likang Disinfectant since 2002; (iii) Co-Owner of Linkwell International (with Xuelian); and (iv) Owner of 35% of the equity of Zhongyou Technology (he also serves as a supervisor).

### 4. Shanghai Yinling Asset Management Company, Limited

Shanghai Yinling is a Chinese limited liability company formed on April 18, 2014. Yinling operates primarily in Shanghai, China. Yinling is the sole shareholder of Leading First and is a minority shareholder of Zhongyou Pharmaceutical.

### 5. Leading First Capital Limited

Leading First is a British Virgin Islands Company with a business address in Shanghai, China. Siegmund alleges that Sidley formed Leading First "on or about June 25, 2014 for the purpose of entering into and consummating transactions contemplated by the merger agreement."

### 6. Leading World Corporation

Leading World is a Florida corporation with a business address in Shanghai, China. It is a wholly owned subsidiary of Leading First. Siegmund alleges that "Sidley formed Leading World on or about August 5, 2014 for the purpose of entering into and consummating transactions contemplated by the merger agreement."

## C.  Relevant Non-Parties

### 1. Linkwell Corporation

Linkwell is a Florida corporation with its principal place of business in Shanghai, China. During the relevant period, Linkwell operated as a public holding company for a number of affiliated entities, including the following direct operating subsidiaries: (i) Linkwell Tech; (ii) Likang Biological; and most notably (iii) Likang Disinfectant. Through these entities, Linkwell developed, manufactured, sold, and distributed disinfectant health care products in China. Siegmund alleges that Linkwell and Likang Disinfectant share the same registered business

address and office space. He also contends that Likang Disinfectant accounted for greater than 99% of Linkwell's total net revenues in 2011.

## D. **Statement of Facts**

This lawsuit stems from a 2014 merger transaction ("Freeze-Out Merger") that converted Linkwell Corporation from a publicly traded company into a private entity. According to Siegmund, the Freeze-Out Merger was "undertaken on behalf of and for the benefit of [Defendants] Xuelian and Wei to: (a) extinguish the valuable claims asserted against them in a previously filed derivative action (*Siegmund v. Bian, et al.*, No 12-cv-62539 (S.D. Fla.)); and (b) directly acquire for Xuelian, Wei, and their affiliates total control of the Company's disinfectant business in China."

Siegmund previously filed a derivative action ("Derivative Action") on behalf of Linkwell alleging that Xuelian and Wei engaged in self-dealing during a 2012 reverse merger transaction ("2012 Reverse Merger") involving Linkwell, Likang Disinfectant, and several third-party entities. The 2012 Reverse Merger allegedly involved two components. First, Linkwell issued 94% of its equity to two companies—Metamining Incorporated and China Direct Investments Incorporated—in exchange for 100% ownership of a company called Metamining Nevada. Siegmund contends that Metamining Nevada had no assets, operations, or employees. Second, Linkwell secretly spun-off Likang Disinfectant and transferred ownership to Xuelian and Wei for no consideration.

Siegmund brought the Derivative Action to challenge Xuelian's and Wei's alleged misconduct and self-dealing during the "sham" Reverse Merger transaction. Sidley became involved in the Derivative Action in April 2014 when it agreed to represent Linkwell, Xuelian, and Wei. Unbeknownst to Siegmund, Sidley also began advising and assisting Linkwell, Xuelian, and Wei in all aspects of the Freeze-Out Merger—an idea it had pitched to Xuelian and Wei in March 2014. Sidley allegedly devised the Freeze-Out Merger for the express purpose of

triggering a forced sale of Siegmund's Linkwell shares and, in turn, divesting him of standing to pursue claims against Xuelian and Wei in the Derivative Action.

On August 12, 2014, Linkwell's Board approved the Freeze-Out Merger. It agreed to convert each of the 549,000 outstanding shares of Linkwell stock into the right to receive $0.88 in cash. The merger consideration paid to Linkwell shareholders totaled $483,120. That equals less than 1% of Likang Disinfectant's 2014 net asset value. Notably, Linkwell, through Linkwell Tech, owned 16.17% of Likang Disinfectant's equity at the time of the Freeze-Out Merger.

Following the Board's approval of the Freeze-Out Merger on August 12, Sidley drafted a proxy statement scheduling a special meeting of Linkwell shareholders in Shanghai on September 19, 2014. It also prepared a notice for the special meeting inviting all Linkwell shareholders to attend and vote to approve the Freeze-Out Merger. Additionally, Sidley oversaw and communicated with the transfer agent tasked with mailing the proxy statement and meeting notice to Linkwell's shareholders.

After the Board's approval of the Freeze-Out Merger but before the shareholders' vote, Sidley (acting as counsel for Linkwell) participated in negotiations with Siegmund's counsel ostensibly to settle the Derivative Action. These talks took place on September 5, 9, and 11, 2014. The day before the September 19 shareholders' vote, Sidley informed Siegmund's counsel that Linkwell would no longer negotiate a settlement of the Derivative Action because the corporation had entered into a transaction.

The Freeze-Out Merger was approved during the September 19 special meeting. Defendants Xuelian and Wei—who, along with their affiliates, controlled over 60% of Linkwell's outstanding shares—attended the special meeting and voted their Linkwell shares in favor of the merger. The same day, Sidley filed Linkwell's Articles of Merger and Amended Articles of Incorporation with the Florida Secretary of State. Siegmund did not receive the plan of merger, proxy statement, or merger agreement in advance of the special meeting to approve the transaction. He discovered the articles of merger and accompanying documents on the Florida Department of State website on October 26, 2014.

# III. COUNT I: SECURITIES FRAUD

## A. Standards

"To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions," instead plaintiffs must "allege some specific factual basis for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir. 2004). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986). This tenet, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 678. Those "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In short, the complaint must not merely allege misconduct, but must demonstrate that the pleader is entitled to relief. *See Iqbal*, 556 U.S. at 679.

Under Federal Rule of Civil Procedure 9(b), a plaintiff must plead the circumstances constituting fraud with particularity. In considering a motion to dismiss for failure to plead fraud with particularity, however, courts must also keep in mind the notice pleading standard set forth in Rule 8(a). Courts "must be careful to harmonize the directives of Fed. R. Civ. P. 9(b) with the broader policy of notice pleading." *SEC v. Physicians Guardian Unit Inv. Trust ex rel. Physicians Guardian, Inc.*, 72 F. Supp. 2d 1342, 1352 (M.D. Fla. 1999) (citing *Friedlander v. Nims*, 755 F.2d 810, 810 (11th Cir. 1985)). According to the Eleventh Circuit, "Rule 9(b) is satisfied if the complaint sets forth '(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" *Ziemba v. Cascade Int'l, Inc.*, 256

F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir.1997)).

Finally, plaintiffs alleging securities fraud under Section 10(b) of the Exchange Act and Rule 10b-5 must satisfy the heightened pleading standards of the Private Securities Litigation Reform Act ("Reform Act"). These pleading standards include stringent requirements for pleading scienter. *See* 15 U.S.C. § 78u-4(b)(1)–(2). "[F]or all private 10b-5 claims requiring proof of scienter, 'the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind [*i.e.*, scienter].'" *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (citing 15 U.S.C. § 78u-4(b)(2)). The complaint must establish this strong inference "for each defendant with respect to each violation." *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1016 (11th Cir. 2004). However, even under the heightened pleading standards of the Reform Act, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011). Furthermore, the Court "must consider the complaint in its entirety." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 310 (2007).

## B. <u>Section 10(b) of the Exchange Act</u>

Section 10(b) of the Exchange Act makes it illegal "for any person . . . directly or indirectly . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance" that violates the Securities and Exchange Commission's rules protecting investors. 15 U.S.C. § 78j. Rule 10b-5—promulgated under Section 10(b)—renders it unlawful to (a) "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading"; (b) "employ any device, scheme, or artifice to defraud"; or (c) "engage in any act, practice, or course of business which operates

or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5 (2000).

Claims under Subsection (b) of Rule 10b-5 involve alleged misrepresentations or omissions. The Eleventh Circuit has explained that "a securities fraud claim based on failure to reveal information to investors . . . has six elements: (1) a material . . . omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the . . . omission; (5) economic loss; and (6) a causal connection between the material . . . omission and the loss, commonly called 'loss causation.'" *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1236–37 (11th Cir. 2008) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005)).

In contrast, claims under Subsections (a) and (c) of Rule 10b-5 involve allegations of a deceptive or manipulative scheme—*i.e.*, "scheme liability." Scheme liability claims are distinct from claims under Rule 10b-5(b). "Rule 10b–5(b) claims are based solely on deceptive statements or omissions, whereas scheme liability claims involve deceptive conduct, which may include deceptive statements or omissions but must also include additional conduct." *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1192 (D. Or. 2015). A defendant engages in a scheme that violates Rule 10b-5(a) and (c) when he "commits deceptive or manipulative acts in furtherance of a fraudulent scheme." *SEC v. Brennan*, 2013 WL 12091655, at *2 (S.D. Fla. Dec. 10, 2013). Conduct is deceptive when it has "the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme." *Id.*

The Supreme Court has explained that a plaintiff bringing a scheme liability claim still must allege the elements of securities fraud. *See Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 158 (2008). However, "[b]ecause scheme liability does not require an allegation that the defendants made a statement, claims brought under Rule 10b–5(a) and (c) need not comport with Subsection (b)(1) of the [Reform Act], which requires that plaintiffs set forth each statement alleged to have been misleading, and facts giving rise to this belief." *In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 473 (S.D.N.Y. 2017) (internal quotations and punctuation omitted). Accordingly, to state a federal securities fraud claim based on a deceptive scheme, a

plaintiff must allege: "(1) the defendant committed a deceptive or manipulative act in furtherance of the alleged scheme; (2) scienter; (3) a connection between the alleged deceptive or manipulative act and the purchase or sale of a security; (4) reliance upon the alleged deceptive or manipulative act; (5) economic loss; and (6) loss causation." *In re Galena*, 117 F. Supp. 3d at 1192 (citing *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S.Ct. 2398, 2406 (2014)).

The parties disagree about whether the Court should assess Siegmund's allegations under Rule 10b-5(b) or Rule 10b-5(a) and (c). Whereas Sidley characterizes Siegmund's allegations as a pure omissions[3] claim under Subsection (b), Siegmund argues that his Amended Complaint states a scheme liability claim under Subsections (a) and (c). Therefore, the Court will evaluate the allegations under the applicable frameworks for both types of fraud claims.

## C.  Analysis of Siegmund's Securities Fraud Claim

The crux of Siegmund's securities fraud claim is straightforward: Sidley masterminded a "sham" Freeze-Out Merger to help Xuelian and Wei (i) avoid liability for their prior self-dealing and (ii) unilaterally purchase Linkwell's outstanding shares for less than fair value. Siegmund alleges Sidley designed and carried out the Freeze-Out Merger to achieve the following objectives: (i) "divest Plaintiff and class members of their stock without notice at a ridiculously low price"; (ii) "defeat Plaintiff's derivative action"; (iii) "subvert a Florida court order to produce stock certificates"; and (iv) "deprive the public shareholders of any opportunity to seek an injunction or appraisal of their shares." (Resp. at 8.)

---

[3] Sidley's characterization of Siegmund's allegations as an omissions claim finds support in the Amended Complaint:

> Sidley, acting on behalf of Xuelian and Wei, knew it had a duty to disclose all material facts to Plaintiff and the Class, and that, if it did, there was a serious risk that the Freeze-Out Merger would have been enjoined. In direct disregard of that known duty, Sidley advised Xuelian and Wei that by not giving notice they would avoid an injunction motion. Plaintiff was in fact deceived by Sidley's misrepresentations and/or omissions.

(Am. Compl. ¶ 207.)

Sidley challenges multiple aspects of Siegmund's securities fraud claim. First, Sidley contends that Siegmund's Amended Complaint fails to establish the following elements of a Rule 10b-5 claim: (i) a material omission[4] *or* a deceptive act in furtherance of a scheme[5]; (ii) scienter; (iii) reliance; and (iv) causation. Second, Sidley asserts that Supreme Court precedent barring 10b-5 claims based on aiding and abetting allegations forecloses Siegmund's claim. The Court addresses each of these arguments in turn.

## 1. Liability Under Rule 10b-5

### *a. Pleading a Material Omission or Deceptive Act*

Siegmund contends that Sidley acted deceptively in two ways. First, Sidley failed to notify Siegmund of the Freeze-Out Merger despite having a duty to do so. Second, Sidley engaged in sham settlement negotiations to further conceal from Siegmund the pending Freeze-Out Merger.

### i. No Duty to Disclose – Rule 10b-5(b)

The Supreme Court has explained that "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b-5." *Basic Inc. v. Levinson*, 485 U.S. 224, 239 (1988). A party "is not required to disclose a fact merely because a reasonable investor would very much like to know that fact." *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993). In the Eleventh Circuit, "a duty to disclose is triggered either because the omitted fact was necessary to render a preexisting statement not misleading, or because the securities law otherwise required its disclosure." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 681 (11th Cir. 2010). This Court previously held in its September 29, 2017 Order that Sidley did not have a duty to notify Siegmund of the Freeze-Out Merger. Sidley's Amended Complaint does not alter that determination for at least three reasons.

---

[4] Applicable for an omissions claim under Rule10b-5(b).
[5] Applicable for a scheme liability claim under Rule 10b-5(a) and (c).

First, Sidley served as counsel for Linkwell, Xuelian, and Wei. It is axiomatic that "[a] lawyer shall not reveal information relating to the representation of a client." Model Rules of Prof'l Conduct r. 1.6 (Am. Bar Ass'n 1983). Based on this precept, Sidley had no duty to inform Siegmund of the deal, and indeed, had an obligation *not* to make such a disclosure. Courts addressing similar situations have therefore held that lawyers have "privileges not to disclose information" about clients. *See Ziemba*, 256 F.3d at 1206; *see also Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 497 (7th Cir. 1986) (holding that attorneys have no obligation to "tattle on their clients" and, indeed, "have privileges not to disclose").

Second, Sidley did not have an attorney-client relationship or even a "relationship of trust and confidence" with Siegmund. *See Schatz v. Rosenberg*, 943 F.2d 485, 492 (4th Cir. 1991). As the Eleventh Circuit has emphasized, "a corporation's counsel does not owe a fiduciary duty . . . to the corporation's shareholders." *Pelletier v. Zweifel*, 921 F.2d 1465, 1490–91 (11th Cir. 1991). Accordingly, Sidley's representation of Linkwell did not create a duty to disclose the Freeze-Out Merger.

Third, Florida's statutory notice requirements did not obligate Sidley to inform Siegmund of the Freeze-Out Merger. The applicable statute requires the corporation to "notify each shareholder" of a plan of merger. *See* Fla. Stat. § 607.1103. It defines a "shareholder" as "one who is a holder of record of shares in a corporation or the beneficial owner of shares to the extent of the rights granted by a nominee certificate on file with a corporation." Fla. Stat. Ann. § 607.01401. As the holder in "street name," Siegmund was not the holder of record and did not qualify as a "shareholder" for purposes of notice. *See Nu Med Home Health Care, Inc. v. Hosp. Staffing Services, Inc.*, 664 So. 2d 353, 354 (Fla. 4th DCA 1995) (explaining that (i) a holder in "street name" is the beneficial owner of the shares, (ii) the holder of record is the nominee, and (iii) "stock is held frequently in a street name and is reflected in the corporate records only by the name of the nominee"). Thus, Siegmund had no right to receive notice of the merger.

For those reasons, Sidley did not have a duty to notify Siegmund of the Freeze-Out Merger. Siegmund therefore cannot state an omissions claim under Subsection (b) of Rule 10b-5.

ii.  Deceptive Act – Rule 10b-5(a) & (c)

"Scheme liability under subsections (a) and (c) of Rule 10b–5 hinges on the performance of an inherently deceptive act that is distinct from an alleged misstatement." *S.E.C. v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011). To state a scheme liability claim based on allegations that multiple defendants collectively acted in violation of Rule 10b-5, Siegmund must show that "each defendant committed a manipulative or deceptive act in furtherance of the scheme." *Cooper v. Pickett*, 137 F.3d 616, 624 (9th Cir. 1997). With respect to Sidley, the Amended Complaint accomplishes this task.

Sidley's participation in the sham settlement negotiations qualifies as a deceptive or manipulative act in furtherance of the purported scheme to defraud. On August 12, 2014, Linkwell's Board approved the Freeze-Out Merger and, according to Siegmund, extinguished the possibility of settling the Derivative Action. Sidley nonetheless engaged in settlement talks with Siegmund's counsel on September 5, 9, and 11. This deceptive conduct misrepresented the continuing possibility of settlement when, in reality, Linkwell's Board had already approved the Freeze-Out Merger and scheduled the shareholders' vote to finalize the transaction. Sidley finally informed Plaintiff's counsel of the deal on September 18—one day before the shareholders' meeting.

Based on these allegations, Sidley's actions had "the principal purpose and effect of creating a false appearance of fact"—*i.e.*, the absence of a merger. *Brennan*, 2013 WL 12091655, at *2. Taken in context, they suggest Sidley engaged in this misleading course of conduct to keep the Freeze-Out Merger under wraps. This perpetuated its plan to deprive Siegmund of his Linkwell shares and help Xuelian and Wei avoid liability for their alleged self-dealing during the 2012 Reverse Merger. *Id.* Accordingly, Siegmund has pled with particularity facts establishing that Sidley committed a deceptive or manipulative act in furtherance of the alleged scheme.

### b.    Pleading Scienter

To state a securities fraud claim under Rule 10b-5, Siegmund must plead with particularity facts giving rise to a strong inference that Sidley acted with a "mental state embracing intent to deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 319 n.3. The allegations of Sidley's mental state must give rise to an inference of scienter that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* He can satisfy this requirement by (i) "alleging facts to show that defendants had both motive and opportunity to commit fraud," or (ii) "alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *In re Alstom SA*, 406 F. Supp. 2d 433, 445 (S.D.N.Y. 2005) (citing *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001)). The Amended Complaint satisfies this requirement.

Siegmund pleads with particularity sufficient factual allegations to establish that Sidley acted with the requisite intent to "deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 319 n.3. The Amended Complaint alleges that Sidley represented Linkwell, Xuelian, and Wei in the Derivative Action and that Linkwell had authorized Sidley to negotiate a partial settlement of that Action on its behalf. At the same time, Sidley also was advising and assisting Xuelian and Wei with the Freeze-Out Merger. (*See* Am. Compl. ¶ 80 ("Sidley represented Xuelian and Wei in the Derivative Action . . . at the same time [it was] taking steps to effectuate the Freeze-Out Merger.").) Indeed, Sidley attorneys advising on the Freeze-Out Merger and the Derivative Action "corresponded with each other on litigation strategy and the status of the 'going private merger.'" (*Id.* ¶ 74.) Allegations that the same Sidley Attorneys contemporaneously worked on, and communicated about, the Derivative Action and Freeze-Out Merger suggest Sidley's point person on the Derivative Action knew Linkwell's Board had already approved the going-private merger when it "negotiated" with Plaintiff's counsel to settle the Derivative Action. Because the Board's approval of the Merger eliminated any reason to settle the Derivative Action, the most compelling inference is that Sidley engaged in these sham negotiations to conceal the existence of the Freeze-Out Merger. Thus, Siegmund's Amended Complaint establishes Sidley's scienter.

### c. *Pleading Reliance and Causation*

Sidley contends that this Court must dismiss Siegmund's Rule 10b-5 claim because he fails to establish the elements of reliance and causation. The Supreme Court has emphasized that "[r]eliance by the Plaintiff upon Defendant's deceptive acts is an essential element of the § 10(b) private cause of action." *Stoneridge*, 552 U.S. at 149. Requiring plaintiffs to establish reliance ensures that the "requisite causal connection" between the defendant's deception and the plaintiff's harm "exists as a predicate for liability." *Id.* (citing *Basic Inc.*, 485 U.S. at 243 and *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 154 (1972)).

As an initial matter, Siegmund maintains that the forced-seller doctrine exempts him from pleading reliance. Sidley rejects this argument, contending that the forced-seller exemption conflicts with Supreme Court precedent requiring a plaintiff to establish reliance in every securities fraud claim under Rule 10b-5. *See Stoneridge*, 552 U.S. at 149. However, as Siegmund points out, courts remain split on whether this holding extends to situations where a minority shareholder is forced to divest himself of his stock without any volitional act. *See Vine v. Beneficial Fin. Co.*, 374 F.2d 627, 635 (2d Cir. 1967). He urges the Court to adopt the Second Circuit's position in *Vine* and likewise hold that where, as here, the plaintiff "has been forced to divest himself of his stock and this is what defendants conspired to do, reliance by plaintiff on the claimed deception need not be shown." *Id.*

Assuming *Vine*'s forced-seller exemption remains valid after *Stoneridge*, it does not apply in this case. *Vine* involved a situation where the plaintiff "could not have relied on any deception because no representation was made to him." 374 F.2d at 635. Here, however, the only sufficiently pled deceptive act—Sidley's participation in the sham settlement negotiations with Siegmund's counsel—impliedly misrepresented the continuing possibility of settlement and, in turn, the absence of a Freeze-Out Merger. Siegmund alleges Sidley engaged in this deceptive conduct to further conceal the pending deal. Thus, unlike *Vine*, Sidley made a representation to Siegmund by virtue of its deceptive conduct. Accordingly, *Vine*'s rationale for applying the forced-seller exemption—*i.e.*, the impossibility of proving reliance without a representation to

rely on—does not apply in this case. *See also Grace v. Rosenstock*, 228 F.3d 40, 49 (2d Cir. 2000) (affirming the need to plead reliance and causation, even in cases arising out of a forced sale).

Because the forced-seller exemption does not apply, Siegmund must do more than show Sidley engaged in a deceptive and manipulative act with the intent to deceive. He must establish that he relied on this deception and, as a result, suffered the loss at issue—*i.e.*, deprivation of the opportunity to enjoin the Freeze-Out Merger, obtain fair value for his shares, or seek appraisal. Siegmund can satisfy the reliance and causation requirements in several ways: (i) establishing a rebuttable presumption of reliance based on an omission of material fact by one with a duty to disclose; (ii) pleading facts showing that he directly relied on Sidley's deceptive conduct and that this reliance caused his harm.

First, Siegmund fails to allege facts giving rise to a rebuttable presumption of reliance. In *Affiliated Ute*, the Supreme Court created a rebuttable presumption of reliance where a Plaintiff establishes "an omission of material fact by one with a duty to disclose." 406 U.S. at 154. However, this Court already explained that Sidley had no duty to inform Siegmund of the pending Freeze-Out Merger. *See Stoneridge*, 552 U.S. at 159 (holding that the presumption of reliance did not apply where defendants "had no duty to disclose[,] and their deceptive acts were not communicated to the public").

Furthermore, Siegmund cannot extend *Affiliated Ute*'s reliance presumption—which applies to omissions claims under 10b-5(b)—to his scheme liability claim under Subsections (a) and (c) of Rule 10b-5. To hold otherwise would permit plaintiffs to avail themselves of the benefits of an omissions claim under Subsection (b) without the burden of pleading an actual omission. *See id.* at 164 (explaining that "the § 10(b) private right should not be extended beyond its present boundaries"); *see also Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 277 F. Supp. 3d 500, 519 (S.D.N.Y. 2017) ("[T]he three subsections of Rule 10b–5 are distinct, and courts must scrutinize pleadings to ensure that misrepresentation or omission claims do not proceed under the scheme liability rubric.") (quoting *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d

152, 161 (S.D.N.Y. 2012)). It would likewise sever the requisite tie between reliance and causation and, in turn, potentially expand the Section 10(b) private cause of action to "reach the whole marketplace in which the issuing company does business." *Stoneridge*, 552 U.S. at 149. Such an expansion is inconsistent with the "narrow dimensions" this Court must give to the implied right of action, and cannot be reconciled with Supreme Court precedent emphasizing that allegations of deception unmoored from the purported harm do not state a cognizable claim under Rule 10b-5. *See id.* at 148. Therefore, *Affiliated Ute*'s rebuttable presumption of reliance does not apply.

Second, Siegmund fails to show that he relied on Sidley's deceit and that this reliance brought about his loss. Although Siegmund provides significant detail about the purported scheme, the only deceptive conduct pled with the requisite particularity involved Sidley's participation in the sham settlement negotiations. To be sure, Siegmund has pled facts establishing that Sidley engaged in those negotiations to further conceal the pending Freeze-Out Merger. But even if Sidley had abstained from that deceptive conduct, nothing suggests Siegmund would have learned about the deal and pending shareholder vote earlier than he ultimately did.

Siegmund admits that Sidley began facilitating the Freeze-Out Merger months before Sidley made the deceptive settlement overtures. Nothing in the Amended Complaint indicates Siegmund knew about the Freeze-Out Merger—or had even the slightest suspicion of a deal— before the September settlement talks with Sidley. In fact, Siegmund confirms he "had no knowledge of any actual or potential go-private merger transaction" before October 26, 2014. (Am. Compl. ¶ 124.) As such, Siegmund does not contend—nor could he—that he changed his conduct or position in reliance on the sham settlement negotiations. Nor does he assert that he would have discovered the pending Freeze-Out Merger but for Sidley's deception. At worst, Sidley's deceptive conduct falsely represented the continued possibility of settlement. Although this did not enlighten Siegmund about the Freeze-Out Merger, it certainly did not cause his

ignorance of the deal. To suggest otherwise would be pure speculation and "is too remote for liability." *Stoneridge*, 552 U.S. at 149.

For these reasons, Siegmund has not carried his "heavy burden in showing that [he] in fact relied upon [Sidley's] own deceptive conduct." *Affco Invs. 2001 LLC v. Proskauer Rose L.L.P.*, 625 F.3d 185, 193 (5th Cir. 2010). He likewise fails to show that Sidley's deception caused his alleged harm. Siegmund's Amended Complaint therefore fails to state a claim against Sidley as a primary violator of Rule 10b-5.

## 2. Aiding and Abetting Allegations Against Secondary Actors

Having failed to establish the requirements for primary liability under Rule 10b-5, Siegmund is left with no viable alternative theory under Section 10(b) to hold Sidley liable as a secondary actor. As Sidley correctly notes, Supreme Court precedent prohibits Rule 10b-5 claims based on aiding and abetting allegations against secondary actors. *See generally Central Bank of Denver N.A. v. First Interstate Bank of Denver N.A.*, 511 U.S. 164 (1994). Although courts have struggled to determine precisely what conduct constitutes aiding and abetting, they agree that "the conduct of a secondary actor must . . . satisfy each of the elements or preconditions for § 10(b) liability" to give rise to a cognizable claim. *Stoneridge*, 552 U.S. at 148; *see also Central Bank*, 511 U.S. at 191 (holding that "a lawyer . . . may be liable as a primary violator under 10b-5, assuming *all* of the requirements for primary liability under Rule 10b-5 are met") (emphasis in original). Applying that rule, the Supreme Court in *Stoneridge* rejected a Rule 10b-5 action involving a party that, like Sidley, "neither [made] a public misstatement nor violate[d] a duty to disclose but [did] participate in a scheme to violate § 10(b)." 552 U.S. at 148.

The *Stoneridge* and *Central Bank* opinions confirm that Siegmund's Amended Complaint pleads the type of aiding and abetting claim the Supreme Court sought to exclude from the Rule 10b-5 private cause of action. Sidley's alleged conduct may constitute "substantial assistance," but it lacks the requisite nexus to Siegmund's actions (or inaction) and the alleged harm. Without that nexus, Siegmund cannot satisfy the reliance and causation elements and, thus, cannot state a

claim under Rule 10b-5. To hold otherwise would "revive in substance the implied cause of action against all aiders and abettors except those who committed no deceptive act in the process of facilitating the fraud" and "would undermine Congress' determination that this class of defendant should be pursued by the SEC and not by private litigants." *Stoneridge*, 552 U.S. at 162–63; *see also* Elizabeth Chamblee Burch, *Securities Class Actions As Pragmatic Ex Post Regulation*, 43 Ga. L. Rev. 63, 99–105 (2008) (discussing the more lenient pleading standards for SEC enforcement actions and the beneficial "interrelationship between private and public enforcement").

D. <u>Dismissing Siegmund's Securities Fraud Claim Under Rule 10b-5</u>

Based on the analysis above, Siegmund has failed to state an actionable claim against Sidley under either 10b-5(b) for a material omission or 10b-5(a) and (c) for a deceptive scheme. Accordingly, Sidley's motion to dismiss Siegmund's claim under Section 10(b) and Rule 10b-5 (Count I) is granted.

The finality of that dismissal raises yet another issue to resolve. Sidley asks the Court to dismiss Siegmund's securities fraud claim *with prejudice*. Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give leave to amend when justice so requires." *Mizzaro*, 544 F.3d at 1255. And although the Reform Act mandates heightened pleading standards for securities fraud claims, it does not alter the liberal amendment policy of Federal Rule of Civil Procedure 15. *See ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 52 (1st Cir. 2008).

That being said, "leave to amend is *not* automatic." *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006). [J]ustice does not require district courts to waste their time on hopeless cases." *Mizzaro*, 544 F.3d at 1255. This Court already permitted Siegmund to file an Amended Complaint after dismissing his original Complaint. Although that Amended Complaint came closer to making the requisite showing, it still failed to establish the critical element of reliance. Furthermore, Siegmund's ability to satisfy the reliance element hinges on the Court's willingness to apply the forced-seller exemption. This Court explained

above that the forced-seller exemption does not apply in this case. And because this determination involves a *matter of law*, "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006). Given the futility of granting leave to file a second amended complaint under such circumstances, Count I is dismissed with prejudice as against Sidley.

## IV. COUNTS III–IV: PERSONAL JURISDICTION

### A. Personal Jurisdiction Standard

In addition to its motion to dismiss Count I for failure to state a claim, Sidley filed a motion to dismiss Counts III (aiding and abetting breach of fiduciary duty) and IV (civil conspiracy) for lack of personal jurisdiction. Sidley contends that Siegmund's allegations do not satisfy any provision of Florida's long-arm statute, thus precluding this Court from exercising personal jurisdiction over Sidley with respect to Siegmund's state law claims.[6]

On a motion to dismiss for lack of personal jurisdiction, the Court accepts as true all allegations in the complaint and decides whether the plaintiff has met its burden of establishing a prima facie case of personal jurisdiction. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). "[W]here the defendant challenges the court's exercise of jurisdiction over its person, the plaintiff bears the ultimate burden of establishing personal jurisdiction is present." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009). A plaintiff establishes a prima facie case by putting forth enough evidence to withstand a motion for a directed verdict. *Stubbs*, 447 F.3d at 1360.

When determining whether personal jurisdiction exists over a defendant, courts generally partake in a two-step analysis. *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1324–25 (M.D. Fla. 2011). A court may exercise personal jurisdiction over a nonresident if: (i) the forum state's long-arm statute confers jurisdiction; and (ii) jurisdiction would not "offend traditional notions of fair play and substantial justice." *PVC Windoors, Inc. v.*

---

[6] Sidley does not challenge this Court's jurisdiction over it with respect to Plaintiff's claim under Section 10(b), which provides for nationwide service of process.

*Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 807 (11th Cir. 2010) (citation and internal quotation marks omitted). Courts proceed to the second step only if the long-arm statute provides for jurisdiction. *Id.* A court must strictly construe the long-arm statute in assessing whether a plaintiff has satisfied its burden of producing affidavits, documents, or testimony that overcome a defendant's evidence challenging personal jurisdiction. *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 627 (11th Cir. 1996) (citations omitted).

## B.  Analysis of the Court's Jurisdiction Over Sidley on Siegmund's State Law Claims

Siegmund argues that this Court has personal jurisdiction over Xuelian and Wei because they engaged in conduct, and authorized Sidley to engage in certain conduct, that amounted to a breach of their fiduciary duties to Linkwell and its shareholders. He alleges that these breaches harmed Linkwell, a Florida corporation, and Linkwell's shareholders, some of whom live in Florida, thus constituting "a tortious act within the state" for purposes of the long-arm statute and "meaningful contacts" for purposes of the Due Process Clause of the United States Constitution.

Siegmund contends that the Court's jurisdiction over Xuelian and Wei on the claim for breach of fiduciary duty in turn provides for personal jurisdiction over Sidley on the related state law claims. To prevail on this theory, Siegmund must establish the following three conditions. First, Xuelian and Wei breached fiduciary duties that they owed Linkwell and its shareholders. Second, Florida's long-arm statute provides—and the Due Process Clause of the United States Constitution allows—for personal jurisdiction over individuals who breach fiduciary duties owed to a Florida company and its shareholders. Third, Sidley's alleged assistance of breaches of fiduciary duties owed to a Florida corporation subjects Sidley to personal jurisdiction in Florida under the long-arm statute and the Due Process Clause of the Constitution.

### 1.  Breach of Fiduciary Duty Claim Against Xuelian and Wei

Siegmund alleges that Xuelian and Wei served as Directors and Officers of Linkwell at all relevant times. Sidley, however, contends that Xuelian and Wei were *not* Directors and Officers at the time of the deal. Xuelian and Wei expand upon this argument in their separate

motion to dismiss, asserting that they resigned as Directors and Officers of Linkwell effective July 18, 2014, and that Judge Gayles acknowledged their resignations in the Derivative Action. However, even assuming Xuelian and Wei resigned as Directors and Officers of Linkwell on July 18—less than a month before Linkwell's Board approved the deal—their resignations do not somehow cleanse them of the misconduct and self-dealing they allegedly engaged in, planned, and authorized while serving as Linkwell Directors.

Florida's courts consistently hold that directors and officers "occupy a quasi-fiduciary relation to the corporation and its stockholders." *Orlando Orange Groves Co. v. Hale*, 107 Fla. 304, 313–14 (1932); *see also Elandia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1329 (S.D. Fla. 2010) ("A director of a company acts in a fiduciary relationship with the company and must exercise diligence and good faith to protect the interests of the company."). Directors "are required to act with the utmost good faith, and they are forbidden to deal in or handle the funds or property of the corporation to their own advantage." *Id.* at 314; *see also Invo Fla. Inc. v. Somerset Venturer, Inc.*, 751 So. 2d 1263, 1267 (Fla. Dist. Ct. App. 2000) (recognizing that a director has a fiduciary relationship with the company and must protect the company's interests). Therefore, Siegmund's allegations that Xuelian and Wei served as Directors of Linkwell likewise establish that they owed fiduciary duties to the company and its shareholders.

Furthermore, Siegmund pleads facts establishing that Xuelian and Wei breached their fiduciary obligations by utilizing "their control of the corporation to their own advantage as against the minority stockholders." *Tillis v. United Parts, Inc.*, 395 So. 2d 618, 619 (Fla. Dist. Ct. App. 1981). Xuelian and Wei purportedly engaged in self-dealing as part of the 2012 Reverse Merger and the 2014 Freeze-Out Merger. To facilitate the Freeze-Out Merger, they authorized Sidley to form a Florida-based merger subsidiary, file documents with the Florida Secretary of State, and undertake deceptive conduct to deprive Linkwell's shareholders of their standing to pursue the Derivative Action in the Southern District of Florida. Finally, Siegmund alleges that Xuelian and Wei participated on one side of the deal by voting, or causing their affiliates to vote,

enough shares to unilaterally approve the forced sale of Linkwell's stock, and on the other side of the deal by purchasing that stock for less than fair value.

Taken as true, Siegmund's allegations reflect Xuelian's and Wei's violation of their fiduciary obligation as Directors of Linkwell to "exercise diligence and good faith to protect the interests of the company." *Elandia Int'l, Inc.*, 690 F. Supp. 2d at 1329. Accordingly, Siegmund has stated a valid claim that Xuelian and Wei breached their fiduciary duties to Linkwell and its shareholders.

### 2. Personal Jurisdiction Over Xuelian and Wei on the Breach of Fiduciary Duty Claim

Having pled sufficient facts to state a claim against Xuelian and Wei for breach of fiduciary duty, Siegmund still must establish that the Court has personal jurisdiction over Xuelian and Wei on that claim. The Court therefore must evaluate whether Siegmund's allegations satisfy Florida's long-arm statute and the Due Process Clause of the United States Constitution.

#### a. *Application of Florida's Long-Arm Statute to the Alleged Breach of Fiduciary Duty*

Sections 1(a)(1)–(2) of Florida's long-arm statute govern personal jurisdiction in this case. *See* Fla. Stat. § 48.193 (1)(a)(1)–(2). Those sections of the long-arm statute provide for personal jurisdiction in Florida over anyone "who personally or through an agent" engages in any of the following acts: (i) "operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state"; or (ii) "committing a tortious act within this state." Fla. Stat. § 48.193.

The Eleventh Circuit has held that "the Florida long-arm statute permits jurisdiction over the nonresident defendant who commits a tort outside of the state that causes injury inside the state." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). Accordingly, "[i]f an individual breaches a fiduciary duty to a company that has a principal place of business or *place of incorporation in Florida* the individual is subject to jurisdiction in Florida under [the] long-arm statute." *Elandia Int'l, Inc.*, 690 F. Supp. 2d at 1329 (emphasis added) (citing *Stateline*

*Power Corp. v. Kremer*, 404 F. Supp. 2d 1373, 1378 (S.D. Fla. 2005)). Having breached their fiduciary duties to Linkwell—"a company that has a . . . place of incorporation in Florida"— Florida's long-arm statute provides for personal jurisdiction over Xuelian and Wei on Siegmund's claim arising out of their breaches.

### b. *Analysis of Fourteenth Amendment Due Process*

Although Florida's long-arm statute provides the Court with personal jurisdiction over Xuelian and Wei on the claim for breach of fiduciary duty, Siegmund still must establish that the Court's exercise of that jurisdiction satisfies the requirements of the Due Process Clause. *See, e.g.*, *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).

The Due Process Clause forbids courts from exercising jurisdiction over a defendant who lacks meaningful contacts, ties, or relations to the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985). A defendant's conduct and connection with the forum state must be such "that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This results when a defendant has purposefully availed himself of the privilege of conducting activities with the forum state. *Burger King Corp.*, 471 U.S. at 472.

Additionally, the Due Process Clause precludes courts from exercising personal jurisdiction where doing so would offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). Courts consider the burden on the defendant of litigating in the forum, the forum's interest in adjudicating the dispute, and the plaintiff's interest in obtaining convenient and effective relief. *See World–Wide Volkswagen*, 444 U.S. at 297. "Where these factors do not militate against otherwise permitted jurisdiction, the Constitution is not offended by its exercise." *Licciardello*, 544 F.3d at 1284 (citing *World–Wide Volkswagen*, 444 U.S. at 292).

Xuelian and Wei engaged in self-dealing and other misconduct at the expense of Linkwell and its shareholders. In doing so, they not only breached their fiduciary duties, but they

committed an intentional tort that caused harm to the Florida corporation and its shareholders, some of whom resided in Florida. In other words, Xuelian and Wei *caused injury in the forum state*. "The Due Process clause is not violated when a court exercises jurisdiction over a defendant's intentional tortious conduct, committed outside of the forum state but calculated to *cause injury in the forum state* . . . ." *Elandia Int'l, Inc.*, 690 F. Supp. 2d at 1338 (emphasis added) (citing *Brennan v. The Roman Catholic Diocese of Syracuse, N.Y., Inc.*, 322 Fed. App'x. 852, 857 (11th Cir. 2009)).

As Directors of a Florida corporation who, at minimum, authorized a transaction involving Florida entities, facilitated by a Florida investment vehicle, and designed to avoid liability in a Florida lawsuit, Xuelian and Wei must have foreseen the possibility of being haled into a Florida court. They "can hardly claim that it is unfair or unjust for them" to answer in Florida for harm they allegedly caused in the state. *Elandia Int'l, Inc.*, 690 F. Supp. 2d at 1338. Furthermore, Florida has a strong interest in providing a forum to obtain relief for harm caused by defendants who engaged in misconduct while availing themselves of the advantages of state's corporate form. *See Brennan*, 322 Fed. App'x at 857. As a shareholder of a Florida corporation, Siegmund "should not have to travel half a world away" to pursue his claim against former directors of that Florida corporation. *Elandia Int'l, Inc.*, 690 F. Supp. 2d at 1339.

Accordingly, Siegmund has established a sufficient connection with the forum such that exerting jurisdiction over Xuelian and Wei does not violate notions of fair play and substantial justice. This Court therefore has personal jurisdiction over Xuelian and Wei on Siegmund's breach of fiduciary duty claim.

### 3. Personal Jurisdiction Over Sidley Under the Long-Arm Statute and United States Constitution

Having established the underlying claim for breach of fiduciary duty, and the Court's jurisdiction over Xuelian and Wei on that claim, Siegmund still must show that this Court has jurisdiction over Sidley on the related state law claims. Here too, the exercise of personal jurisdiction must "(1) be appropriate under the state long-arm statute and (2) not violate the Due

Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp*, 556 F.3d at 1274.

First, courts in this district hold that those who conspire to breach a fiduciary duty or aid and abet a breach of fiduciary duty and, in doing so, harm a Florida corporation are subject to personal jurisdiction in Florida under the long-arm statute. *See Elandia Int'l, Inc.*, 690 F. Supp. 2d at 1329. Here, Siegmund alleges that Sidley masterminded an entire scheme to further Xuelian's and Wei's breaches of fiduciary duties. As part of that scheme, Sidley not only facilitated harm to a Florida corporation, but it undertook acts targeting the state. Specifically, Sidley engaged in deceptive conduct while representing Linkwell in the ongoing Derivative Action in the Southern District of Florida. And as part of the Freeze-Out Merger, Sidley filed Linkwell's Amended Articles of Incorporation and Articles of Merger with the Florida Secretary of State. Therefore, Sidley's substantial assistance of Xuelian's and Wei's breaches of fiduciary duties satisfies Florida's long-arm statute.

Second, this Court's exercise of personal jurisdiction over Sidley on Counts III and IV does not violate the Due Process Clause of the United States Constitution. By assisting Xuelian's and Wei's breaches of fiduciary duties, Sidley allegedly undertook acts that were directed at Florida and harmed a Florida corporation. This intentional conduct established constitutionally significant contacts with the state. *See Int'l Shoe Co.*, 326 U.S. at 319. And because the conduct was calculated to cause injury in Florida, Sidley must have reasonably anticipated being haled into court in Florida. *See Elandia Int'l, Inc.*, 690 F. Supp. 2d at 1329. Thus, exercising jurisdiction over Sidley in Florida does not offend traditional notions of fair play and substantial justice. *See PVC Windoors, Inc.*, 598 F.3d at 807.

In short, Florida's long-arm statute provides for personal jurisdiction over Sidley with respect to Siegmund's state law claims, and this Court's exercise of that jurisdiction comports with the Constitution. Accordingly, Sidley's motion to dismiss Counts III and IV of Siegmund's Amended Complaint for lack of personal jurisdiction is DENIED.

## V.  COUNT III: AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

To state a claim for aiding and abetting breach of fiduciary duty, a plaintiff must establish the following: (i) the primary wrongdoer had a fiduciary duty; (ii) the primary wrongdoer breached that fiduciary duty; (iii) the aider and abettor had knowledge of the breach; and (iv) the aider and abettor substantially assisted or encouraged the wrongdoing. *See Bruhl v. Price Waterhousecoopers Int'l*, 2007 WL 983263, at *10 (S.D. Fla. Mar. 27, 2007). To plead substantial assistance, a plaintiff must allege (i) recklessness and a duty to disclose the breach, or (ii) conscious intent. *Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Group, Ltd.*, 2011 WL 1233106, at *9 (S.D. Fla. 2011). However, where plaintiff's allegations do not establish a duty to disclose, liability can be imposed *only* upon a finding of a "high conscious intent" and a "conscious and specific motivation" to aid the fraud. *Id.*

Sidley contends that Siegmund's claim for aiding and abetting breach of fiduciary duty fails for the following three reasons. First, Xuelian and Wei did not owe Siegmund any fiduciary duties. Second, Siegmund fails to establish that Xuelian and Wei breached a fiduciary duty. Third, the Amended Complaint does not show that Sidley provided substantial assistance to any breach. These arguments fail.

As already explained, Siegmund sufficiently alleges that Xuelian and Wei owed, and breached, fiduciary duties to Linkwell and its shareholders. He also pled facts establishing that Sidley provided substantial assistance in furtherance of Xuelian's and Wei's breaches. Although Sidley had no duty to notify Siegmund of the Freeze-Out Merger, the Amended Complaint details Sidley's "high conscious intent" and its "conscious and specific motivation" to help Xuelian and Wei breach their fiduciary duties and avoid liability for those breaches. Siegmund's allegations that Sidley designed and implemented the Freeze-Out Merger, determined the lowball merger consideration, and engaged in sham settlement negotiations establish Sidley's "high conscious intent" to aid Xuelian's and Wei's breaches of their fiduciary duties.

Having established that Sidley provided substantial assistance with the requisite intent, Siegmund has sufficiently pled his claim against Sidley for aiding and abetting breach of

fiduciary duty. Accordingly, Sidley's motion to dismiss Count III for failure to state a claim is DENIED.

## VI.  COUNT IV – CIVIL CONSPIRACY

Finally, Sidley challenges Siegmund's civil conspiracy claim. Florida does not recognize an independent cause of action for civil conspiracy. *Allocco v. City of Coral Gables,* 221 F. Supp. 2d 1317, 1360–61 (S.D. Fla. 2002). Rather, civil conspiracy is a derivative action that arises out of an independent actionable claim. *Id.* Accordingly, "a claim that is found not to be actionable cannot serve as the basis for a conspiracy claim." *Id.* To plead a claim for civil conspiracy under Florida law, a plaintiff must establish the following four elements: "(1) an agreement between two or more parties (2) to do an unlawful act by unlawful means, (3) the committing of an overt act in pursuance of the conspiracy, and (4) damage to the plaintiff as a result of the act." *Vista Mktg., LLC v. Burkett,* 999 F. Supp. 2d 1294, 1297 (M.D. Fla. 2014) (quoting *Bankers Life Ins. Co. v. Credit Suisse First Boston Corp.,* 590 F. Supp. 2d 1364, 1368 (M.D. Fla. 2008)).

Siegmund has sufficiently pled his claim against Sidley for aiding and abetting breach of fiduciary duty. That independent claim provides the requisite basis for Siegmund's civil conspiracy claim. Siegmund has also alleged that Sidley agreed to help Xuelian and Wei breach their fiduciary duties and avoid liability for their unlawful conduct. Siegmund's Amended Complaint therefore states an actionable civil conspiracy claim. Accordingly, Sidley's motion to dismiss Count IV for failure to state a claim is DENIED.

## VII.  CONCLUSION

Based on the Court's evaluation of Siegmund's claims against Sidley, and the arguments for and against dismissal of those claims, it is

**ADJUDGED** as follows:

(1) Sidley's motion to dismiss Count I (securities fraud under Rule 10b-5) is GRANTED. Count I as against Sidley is DISMISSED WITH PREJUDICE.

(2) Sidley's motion to dismiss Count III (aiding and abetting breach of fiduciary duty) is DENIED.

(3) Sidley's motion to dismiss Count IV (civil conspiracy) is DENIED.

(4) Sidley must file an answer to Siegmund's First Amended Complaint by April 20, 2018.

DONE AND ORDERED in Chambers at Miami, Florida, this __2nd__ of ~~March~~ April 2018.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record