UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 16-62506-CIV-MORENO**

FREDERICK SIEGMUND,

        Plaintiff,

vs.

XUELIAN BIAN, WEI GUAN, SIDLEY
AUSTIN LLP, SHANGHAI YINLING
ASSET MANAGEMENT, CO., LTD.,
LEADING FIRST CAPITAL LIMITED, and
LEADING WORLD CORPORATION,

        Defendants.

_____/

## ORDER DENYING XUELIAN BIAN AND WEI GUAN'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

### I. INTRODUCTION

This is a securities class action alleging violations of state and federal law in connection with Linkwell Corporation's 2014 go-private merger ("Freeze-Out Merger"). Frederick Siegmund—the Class Representative—argues that six Defendants engaged in a deceptive scheme designed to help two Linkwell Directors avoid liability for prior self-dealing and fraudulently deprive Linkwell shareholders of their stock for less than fair value. Siegmund's First Amended Complaint includes the following four counts: (I) violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5; (II) breach of fiduciary duty; (III) aiding and abetting breach of fiduciary duty; and (IV) civil conspiracy.

Defendants Xuelian Bian and Wei Guan—named in Counts I, II, and IV—moved to dismiss Siegmund's claims. First, Xuelian and Wei contend that the Court lacks personal jurisdiction over them on Siegmund's securities fraud claim (Count I) and, regardless, Siegmund fails to state a claim under Rule 10b-5. Second, they challenge the Court's personal jurisdiction

over them with respect to Siegmund's claims for breach of fiduciary duty (Count II) and civil conspiracy (Count IV). Third, Xuelian and Wei argue that Siegmund fails to state a claim for relief in Counts II and IV.

Because the Court has personal jurisdiction over Xuelian and Wei on all three counts, the motion to dismiss for lack of personal jurisdiction is DENIED. With respect to Count I, Siegmund has pled with particularity sufficient facts to state a claim under Section 10(b) of the Exchange Act. Accordingly, Xuelian and Wei's motion to dismiss Count I is DENIED. As for Counts II and IV, the Court finds that Siegmund stated valid claims against Xuelian and Wei for breach of fiduciary duty and civil conspiracy. Therefore, Xuelian and Wei's motions to dismiss Counts II and IV for failure to state claims are DENIED.

## II. BACKGROUND

### A. Plaintiff

#### 1. Frederick Siegmund (Class Representative)

Frederick Siegmund is the named plaintiff bringing this suit individually and on behalf of all similarly situated "street-name" shareholders of Linkwell Corporation. He is a citizen of the State of New York. According to the Complaint, Siegmund owned Linkwell shares throughout the relevant time period. Those shares were cancelled from his brokerage account on November 6, 2014 following the Freeze-Out Merger. Siegmund claims that neither he nor his broker received any information concerning the Freeze-Out Merger. He was not provided with the merger agreement, proxy statement, or notice of the shareholders' meeting to vote on the transaction. Finally, he alleges that he did not receive notice of his statutory appraisal rights or any other rights in connection with the Freeze-Out Merger.

### B. Defendants

#### 1. Sidley Austin LLP

Sidley Austin is an international law firm operating as a limited liability partnership. Sidley maintains its headquarters in Chicago, IL and has offices in 20 cities worldwide.

## 2. Xuelian Bian

Xuelian Bian is a Chinese Citizen and former controlling shareholder[1] of Linkwell. He became a controlling shareholder in May 2005 and remained a controlling shareholder of Linkwell at all relevant times. Siegmund alleges that as an Officer and Director of Linkwell, Xuelian engaged in and authorized the misconduct alleged in the Amended Complaint. Siegmund also asserts that Xuelian had the power to control the contents of Linkwell's public statements to the financial marketplace as well as access to adverse non-public information about the company. Seigmund contends that Xuelian therefore had an obligation to promptly and accurately disclose such adverse facts to the company's shareholders and the financial markets.

Xuelian also maintains the following positions: (i) Chief Executive Officer and Director of Linkwell Tech since its inception in 2004; (ii) General Manager of Likang Disinfectant since 1993; (iii) Executive Director and controlling shareholder of Zhongyou Pharmaceutical; (iv) Co-Owner of Linkwell International (with Wei); and (v) Owner of 30% of the equity of Zhongyou (Shanghai) Technology Development Company Limited.

## 3. Wei Guan

Wei Guan is a Chinese Citizen and former controlling shareholder[2] of Linkwell. He became a controlling shareholder in May 2005 and remained a controlling shareholder of Linkwell at all relevant times. Siegmund alleges that as an Officer and Director of Linkwell, Wei engaged in and authorized the misconduct alleged in the Amended Complaint. Siegmund also asserts that Wei had the power to control the contents of Linkwell's public statements to the financial marketplace as well as access to adverse non-public information about the company. Seigmund contends that Wei therefore had an obligation to promptly and accurately disclose such adverse facts to the company's shareholders and the financial markets.

---

[1] Although Siegmund describes Xuelian and Wei as controlling shareholders, he does not indicate what percentage of Linkwell's outstanding shares each of them owned individually. He alleges that together they owned 43% of Linkwell's outstanding shares and controlled "more than 60% of Linkwell's stock." (Am. Compl. ¶ 82.)

[2] *See supra* note 1.

Wei also maintains the following positions: (i) Vice President of Linkwell Tech since its inception in June 2004; (ii) Vice General Manager of Likang Disinfectant since 2002; (iii) Co-Owner of Linkwell International (with Xuelian); (iv) Owner of 35% of the equity of Zhongyou Technology (he also serves as a supervisor).

### 4. *Shanghai Yinling Asset Management Company, Limited*

Shanghai Yinling is a Chinese limited liability company formed on April 18, 2014. Yinling operates primarily in Shanghai, China. Yinling is the sole shareholder of Leading First and is a minority shareholder of Zhongyou Pharmaceutical.

### 5. *Leading First Capital Limited*

Leading First is a British Virgin Islands Company with a business address in Shanghai, China. Siegmund alleges that Sidley formed Leading First "on or about June 25, 2014 for the purpose of entering into and consummating transactions contemplated by the merger agreement."

### 6. *Leading World Corporation*

Leading World is a Florida corporation with a business address in Shanghai, China. It is a wholly owned subsidiary of Leading First. Siegmund alleges that "Sidley formed Leading World on or about August 5, 2014 for the purpose of entering into and consummating transactions contemplated by the merger agreement."

## C. Relevant Non-Parties

### 1. *Linkwell Corporation*

Linkwell is a Florida corporation with its principal place of business in Shanghai, China. During the relevant period, Linkwell operated as a public holding company for a number of affiliated entities, including the following direct operating subsidiaries: (i) Linkwell Tech; (ii) Likang Biological; and most notably (iii) Likang Disinfectant. Through these entities, Linkwell developed, manufactured, sold, and distributed disinfectant health care products in China. Siegmund alleges that Linkwell and Likang Disinfectant share the same registered business

address and office space. He also contends that Likang Disinfectant accounted for greater than 99% of Linkwell's total net revenues in 2011.

## D. Statement of Facts

This lawsuit stems from a 2014 merger transaction ("Freeze-Out Merger") that converted Linkwell Corporation from a publicly traded company into a private entity. According to Siegmund, the Freeze-Out Merger was "undertaken on behalf of and for the benefit of [Defendants] Xuelian and Wei to: (a) extinguish the valuable claims asserted against them in a previously filed derivative action (*Siegmund v. Bian, et al.*, No 12-cv-62539 (S.D. Fla.)); (b) and directly acquire for Xuelian, Wei, and their affiliates total control of the Company's disinfectant business in China."

Siegmund previously filed a derivative action ("Derivative Action") on behalf of Linkwell alleging that Xuelian and Wei engaged in self-dealing during a 2012 "sham" reverse merger transaction ("2012 Reverse Merger") involving Linkwell, Likang Disinfectant, and several third-party entities. The 2012 Reverse Merger allegedly involved two components. First, Linkwell issued 94% of its equity to two companies—Metamining Incorporated and China Direct Investments Incorporated—in exchange for 100% ownership of a company called Metamining Nevada. Siegmund contends that Metamining Nevada had no assets, operations, or employees. Second, Linkwell secretly spun-off Likang Disinfectant and transferred ownership to Xuelian and Wei for no consideration. Siegmund contends that the purpose of the 2012 Reverse Merger "was to enable Xuelian and Wei to transfer control of Linkwell to certain related third parties, while stripping the assets and operations of the subsidiary disinfectant business in China for themselves and for no consideration to [Linkwell]."

Xuelian and Wei met with Sidley on March 7, 2014 and March 28, 2014 to discuss a possible take-private transaction and ultimately hired Sidley on April 4, 2014 to begin effectuating the Freeze-Out Merger. The Freeze-Out Merger was designed for the express purpose of triggering a forced sale of Siegmund's (and other shareholders') Linkwell stock and,

in turn, divesting him of standing to pursue claims against Xuelian and Wei in the Derivative Action. Notably, Xuelian and Wei had also retained Sidley to advise them and Linkwell on the Derivative Action.

On August 12, 2014, Linkwell's Board approved the Freeze-Out Merger. It agreed to convert each of the 549,000 outstanding shares of Linkwell stock into the right to receive $0.88 in cash. Xuelian and Wei approved the merger consideration paid to Linkwell shareholders, which totaled $483,120. The total merger consideration amounted to less than 1% of Likang Disinfectant's 2014 net asset value. Notably, Linkwell, through Linkwell Tech, owned 16.17% of Likang Disinfectant's equity at the time of the Freeze-Out Merger.

Following the Board's approval of the Freeze-Out Merger on August 12, Sidley drafted a proxy statement scheduling a special meeting of Linkwell shareholders in Shanghai on September 19, 2014. It also prepared a notice for the special meeting inviting all Linkwell shareholders to attend and vote to approve the Freeze-Out Merger. Sidley oversaw and communicated with the transfer agent tasked with mailing the proxy statement and meeting notice to Linkwell's shareholders. Siegmund states, upon information and belief, that Xuelian and Wei learned from Sidley that the proxy statement and the notice of the special meeting would not reach Linkwell's street-name shareholders "in time for them to seek an injunction of the Freeze-Out Merger or exercise appraisal rights." Indeed, Xuelian and Wei retained Sidley pursuant to an engagement letter that "specifically contemplated that there would be no interlopers or deal litigation."

The Freeze-Out Merger was approved during the September 19 special meeting. Xuelian and Wei—who, along with their affiliates, controlled over 60% of Linkwell's outstanding shares—attended the Special Meeting and voted their Linkwell shares in favor of the merger. The same day, Sidley filed Linkwell's Articles of Merger and Amended Articles of Incorporation with the Florida Secretary of State. Siegmund did not receive the plan of merger, proxy statement, or merger agreement in advance of the special meeting to approve the transaction. He

discovered the articles of merger and accompanying documents on the Florida Department of State website on October 26, 2014.

### III. PERSONAL JURISDICTION

Xuelian and Wei contend that this Court lacks personal jurisdiction over them on Siegmund's federal securities fraud claim as well as his state law claims for breach of fiduciary duty and civil conspiracy. On a motion to dismiss for lack of personal jurisdiction, the Court accepts as true all allegations in the complaint and decides whether the plaintiff has met its burden of establishing a prima facie case of personal jurisdiction. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). "[W]here the defendant challenges the court's exercise of jurisdiction over its person, the plaintiff bears the ultimate burden of establishing personal jurisdiction is present." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009). A plaintiff establishes a prima facie case by putting forth enough evidence to withstand a motion for a directed verdict. *Stubbs*, 447 F.3d at 1360.

When determining whether personal jurisdiction exists over a defendant, courts generally partake in a two-step analysis. *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1324–25 (M.D. Fla. 2011). A court may exercise personal jurisdiction over a nonresident if: (i) the forum state's long-arm statute confers jurisdiction; and (ii) jurisdiction would not "offend traditional notions of fair play and substantial justice." *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 807 (11th Cir. 2010) (citation and internal quotation marks omitted). Courts proceed to the second step only if the long-arm statute provides for jurisdiction. *Id.* A court must strictly construe the long-arm statute in assessing whether a plaintiff has satisfied its burden of producing affidavits, documents, or testimony that overcome a defendant's evidence challenging personal jurisdiction. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996) (citations omitted).

**A. Personal Jurisdiction Over Xuelian and Wei on Siegmund's State Law Claims**

Xuelian and Wei challenge the Court's personal jurisdiction over them on Siegmund's claims under Florida law for breach of fiduciary duty (Count II) and civil conspiracy (Count IV). Siegmund argues that this Court has personal jurisdiction over Xuelian and Wei because they engaged in conduct, and authorized Sidley to engage in certain conduct, that amounted to a breach of their fiduciary duties to Linkwell and its shareholders. He alleges that these breaches harmed Linkwell, a Florida corporation, and Linkwell's shareholders, some of whom live in Florida, thus constituting "a tortious act within the state" for purposes of the long-arm statute.

*1. Personal Jurisdiction Under Florida's Long-Arm Statute*

Sections 1(a)(1)–(2) of Florida's long-arm statute govern personal jurisdiction in this case. *See* Fla. Stat. § 48.193 (1)(a)(1)–(2). Those sections of the long-arm statute provide for personal jurisdiction in Florida over anyone "who personally or through an agent" engages in any of the following acts: (i) "operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state"; or (ii) "committing a tortious act within this state." Fla. Stat. § 48.193.

The Eleventh Circuit has held that "the Florida long-arm statute permits jurisdiction over the nonresident defendant who commits a tort outside of the state that causes injury inside the state." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). Accordingly, "[i]f an individual breaches a fiduciary duty to a company that has a principal place of business or *place of incorporation in Florida* the individual is subject to jurisdiction in Florida under [the] long-arm statute." *Elandia Int'l, Inc.*, 690 F. Supp. 2d at 1329 (emphasis added) (citing *Stateline Power Corp. v. Kremer*, 404 F. Supp. 2d 1373, 1378 (S.D. Fla. 2005)).

Xuelian and Wei allegedly engaged in self-dealing and other misconduct at Linkwell's expense. In doing so, they committed an intentional tort that caused harm to the Florida corporation and its shareholders, some of whom reside in Florida. Having breached their fiduciary duties to Linkwell—"a company that has a . . . place of incorporation in Florida"—and

caused injury in Florida, the state's long-arm statute provides for personal jurisdiction over Xuelian and Wei on Siegmund's state law claims. *See Elandia Int'l, Inc.*, 690 F. Supp. 2d at 1329

## 2. *Personal Jurisdiction Under the Due Process Clause of the Fourteenth Amendment*

Although Florida's long-arm statute provides the Court with personal jurisdiction over Xuelian and Wei on the state law claims, Siegmund still must establish that the Court's exercise of that jurisdiction satisfies the Due Process Clause. *See, e.g., United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).

### a. *Minimum Contacts*

A defendant has sufficient minimum contacts with the forum where those contacts: "(1) are related or have given rise to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully avails itself of the benefits and protections of a forum's laws; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *City Pension Fund for Firefighters & Police Officers in City of Miami Beach v. Aracruz Cellulose S.A.*, 41 F. Supp. 3d 1369, 1404 (S.D. Fla. 2011) (citing *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1545 (11th Cir. 1993)). "Other courts have suggested that in order to extend specific jurisdiction over a defendant based upon conduct occurring outside the United States, the plaintiff must demonstrate the defendant's acts caused effects in the United States, which were direct and foreseeable as a result of the actions abroad, and the defendant knew or should have known that the actions would have effects in the United States." *Id.* at 1404. Under either analysis, Xuelian's and Wei's connections to the forum satisfy the minimum contacts test.

Siegmund alleges that Xuelian and Wei, while Directors and Officers of Linkwell[3], engaged in certain misconduct that prompted his fraud claim and established minimum contacts

---

[3] Siegmund alleges that Xuelian and Wei served as Directors and Officers of Linkwell at all relevant times. Xuelian and Wei dispute this, asserting that they resigned as Directors and Officers of Linkwell effective July 18, 2014, and that Judge Gayles acknowledged their resignations in the Derivative Action. However, even assuming Xuelian and Wei resigned as Directors and Officers of Linkwell on July 18—less than a month before Linkwell's Board approved the deal—their resignations do not somehow cleanse them of

with the forum. First, Siegmund's securities fraud claim arises out of Xuelian's and Wei's self-dealing as part of the 2012 Reverse Merger and the 2014 Freeze-Out Merger. Second, Linkwell's stock, of which Xuelian and Wei owned 43% and controlled over 60%, traded on the "Over-The-Counter Bulletin Board"—an electronic trading service operated by the Financial Industry Regulatory Authority. To remove Linkwell stock from this U.S.-based public trading platform, Xuelian and Wei authorized Sidley to form a merger subsidiary in Florida, file documents with the Florida Secretary of State, and undertake deceptive conduct to deprive Linkwell's shareholders of their standing to pursue the Derivative Action in the Southern District of Florida. Third, as Directors of a Florida corporation who approved a merger involving Florida entities in order to avoid liability in a Florida lawsuit, Xuelian and Wei must have foreseen the possibility of being haled into a Florida court.

Furthermore, Siegmund alleges that Xuelian and Wei participated on one side of the deal by voting (or causing their affiliates to vote) enough shares to unilaterally approve the forced sale of Linkwell's stock, and on the other side of the deal by purchasing that stock for less than fair value. This tortious conduct caused harm to the Florida corporation and its shareholders, some of whom resided in Florida. In other words, Xuelian and Wei caused injury in the forum state. "The Due Process clause is not violated when a court exercises jurisdiction over a defendant's intentional tortious conduct, committed outside of the forum state but calculated to cause injury in the forum state, because the defendant must have reasonably anticipated being haled into court in the forum state regarding those actions." *Elandia Int'l, Inc.*, 690 F. Supp. 2d at 1338 (emphasis added) (citing *Brennan v. The Roman Catholic Diocese of Syracuse, N.Y., Inc.*, 322 Fed. App'x. 852, 857 (11th Cir. 2009)).

   *b.   Reasonableness*

Even if a nonresident defendant possesses minimum contacts with the forum, the exercise of jurisdiction nevertheless violates the Due Process Clause process unless it comports with

the misconduct and self-dealing they allegedly engaged in, planned, and authorized while serving as Linkwell Directors.

traditional notions of fair play and substantial justice. *Aracruz Cellulose S.A.*, 41 F. Supp. 3d at 1404 (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). "In assessing the reasonableness of exercising personal jurisdiction the court must consider: (1) the burden on the defendant; (2) the [forum's] interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most efficient resolution; and (5) the shared interest between states in furthering substantive social policies." *Aracruz Cellulose S.A.*, 41 F. Supp. 3d at 1406 (citing *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

As Directors of a Florida corporation who, at minimum, authorized a transaction involving Florida entities, facilitated by a Florida investment vehicle, and designed to avoid liability in a Florida lawsuit, Xuelian and Wei "can hardly claim that it is unfair or unjust for them" to answer in Florida for harm they allegedly caused in the state. *Elandia Int'l, Inc.*, 690 F. Supp. 2d at 1338. Furthermore, the United States has a strong interest adjudicating the dispute in order to "to protect American shareholders and insure the integrity of trading securities of American corporations." *SEC v. Alexander*, No. 00 CIV.7290 LTS HBP, 2003 WL 21196852, at *4 (S.D.N.Y. May 20, 2003). Likewise, Siegmund has a strong interest in obtaining convenient and effective relief for harm caused by defendants who availed themselves of the advantages of the federal securities laws. *See Brennan*, 322 Fed. App'x at 857. Siegmund "should not have to travel half a world away" to pursue his claim against former directors of a Florida corporation for fraudulently depriving him of stock that was publicly traded on a U.S.-based, domestically regulated, securities trading platform. *Elandia Int'l, Inc.*, 690 F. Supp. 2d at 1339.

Accordingly, Siegmund has established sufficient minimum contacts with the forum such that exerting jurisdiction over Xuelian and Wei does not offend traditional notions of fair place and substantial justice. Because Siegmund's allegations satisfy Florida's long-arm statute and the Due Process Clause of the Fourteenth Amendment, this Court may exercise personal jurisdiction over Xuelian and Wei on Siegmund's claims for breach of fiduciary duty and civil conspiracy.

## B. Personal Jurisdiction Over Xuelian and Wei on Siegmund's Securities Fraud Claim

Xuelian and Wei likewise challenge the Court's personal jurisdiction over them on Siegmund's securities fraud claim under Rule 10b-5. The Exchange Act allows courts to exercise personal jurisdiction to the limit of the Fifth Amendment Due Process Clause. *See SEC v. Smyth*, 420 F.3d 1225, 1233 (11th Cir. 2005) (citing *SEC v. Unifund SAL*, 910 F.2d 1028, 1033 (2d Cir. 1990)). The Due Process Clause "constrains a federal court's power to acquire personal jurisdiction over a nonresident defendant." *SEC v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997) (internal quotations and citations omitted). It permits courts to exert personal jurisdiction when (i) the nonresident defendant has intentionally established certain minimum contacts with the forum, and (ii) exerting personal jurisdiction comports with traditional notions of fair play and substantial justice. *See Francosteel Corp. v. M/V Charm.*, 19 F.3d 624, 627 (11th Cir. 1994).

As explained above, Siegmund pled facts establishing Xuelian's and Wei's minimum contacts with Florida and that this Court's exercise of personal jurisdiction over Xuelian and Wei on Siegmund's state law claims would not offend traditional notions of fair play and substantial justice. Those findings likewise satisfy the personal jurisdiction limitations of the Fifth Amendment Due Process Clause, which applies where, as here, a court "derives its personal jurisdiction over a defendant from a federal statute's nationwide-service-of-process provision." *Bally Gaming, Inc. v. Kappos*, 789 F. Supp. 2d 41, 45 (D.D.C. 2011); *see also Carrillo*, 115 F.3d at 1543 (noting that, for claims under Section 10(b) of the Exchange Act, service of process [is] effected pursuant to a federal statute authorizing nationwide or worldwide service"). Accordingly, the Court may exercise personal jurisdiction over Xuelian and Wei on Siegmund's securities fraud claim.

## C. Personal Jurisdiction Over Xuelian and Wei on All Three Claims

For the reasons discussed, Florida's long-arm statute provides for personal jurisdiction over Xuelian and Wei on Siegmund's state law claims for breach of fiduciary duty and civil conspiracy. Furthermore, exercising personal jurisdiction over Xuelian and Wei on Siegmund's

state and federal law claims comports with the Due Process Clauses of the Fifth and Fourteenth Amendments. Accordingly, Xuelian and Wei's motion to dismiss Counts I–II and IV for lack of personal jurisdiction is denied.

## IV. BREACH OF FIDUCIARY DUTY

Siegmund alleges that Xuelian and Wei served as Directors and Officers of Linkwell at all relevant times.[4] Florida's courts consistently hold that directors and officers "occupy a quasi-fiduciary relation to the corporation and its stockholders." *Orlando Orange Groves Co. v. Hale*, 107 Fla. 304, 313–14 (1932); *see also Elandia Int'l, Inc.*, 690 F. Supp. 2d at 1329 ("A director of a company acts in a fiduciary relationship with the company and must exercise diligence and good faith to protect the interests of the company."). Directors "are required to act with the utmost good faith, and they are forbidden to deal in or handle the funds or property of the corporation to their own advantage." *Id.* at 314; *see also Invo Fla. Inc. v. Somerset Venturer, Inc.*, 751 So. 2d 1263, 1267 (Fla. Dist. Ct. App. 2000) (recognizing that a director has a fiduciary relationship with the company and must protect the company's interests). Therefore, Siegmund's allegations that Xuelian and Wei served as Directors of Linkwell likewise establish that they owed fiduciary duties to the company and its shareholders.

Furthermore, Siegmund pleads facts establishing that Xuelian and Wei breached their fiduciary obligations by utilizing "their control of the corporation to their own advantage as against the minority stockholders." *Tillis v. United Parts, Inc.*, 395 So. 2d 618, 619 (Fla. Dist. Ct. App. 1981). Xuelian and Wei purportedly engaged in self-dealing as part of the 2012 Reverse Merger and the 2014 Freeze-Out Merger. To facilitate the Freeze-Out Merger, they authorized Sidley to form a Florida-based merger subsidiary, file documents with the Florida Secretary of State, and undertake deceptive conduct to deprive Linkwell's shareholders of their standing to pursue the Derivative Action in the Southern District of Florida. Finally, Siegmund alleges that Xuelian and Wei participated on one side of the deal by voting—or causing their affiliates to

---

[4] *See supra*, note 4.

13

vote—enough shares to unilaterally approve the forced sale of Linkwell's stock, and on the other side of the deal by purchasing that stock for less than fair value.

Taken as true, Siegmund's allegations reflect Xuelian's and Wei's violations of their fiduciary obligations as Directors of Linkwell to "exercise diligence and good faith to protect the interests of the company." *Elandia Int'l, Inc.*, 690 F. Supp. 2d at 1329. Because Siegmund has therefore stated a valid claim against Xuelian and Wei for breach of their fiduciary duties, Xuelian and Wei's motion to dismiss Count II is denied.

## V.   CIVIL CONSPIRACY

Xuelian and Wei also challenge Siegmund's civil conspiracy claim. Florida does not recognize an independent cause of action for civil conspiracy. *Allocco v. City of Coral Gables,* 221 F. Supp. 2d 1317, 1360–61 (S.D. Fla. 2002). Rather, civil conspiracy is a derivative action that arises out of an independent actionable claim. *Id.* Accordingly, "a claim that is found not to be actionable cannot serve as the basis for a conspiracy claim." *Id.* To plead a claim for civil conspiracy under Florida law, a plaintiff must establish the following four elements: "(1) an agreement between two or more parties (2) to do an unlawful act by unlawful means, (3) the committing of an overt act in pursuance of the conspiracy, and (4) damage to the plaintiff as a result of the act." *Vista Mktg., LLC v. Burkett,* 999 F. Supp. 2d 1294, 1297 (M.D. Fla. 2014) (quoting *Bankers Life Ins. Co. v. Credit Suisse First Boston Corp.*, 590 F. Supp. 2d 1364, 1368 (M.D. Fla. 2008)).

Siegmund has sufficiently pled his claim against Xuelian and Wei for breach of fiduciary duty. That independent claim, which involved Sidley's agreement to provide substantial assistance in furtherance of Xuelian's and Wei's breaches of fiduciary duties, provides the requisite basis for Siegmund's civil conspiracy claim. Therefore, Siegmund's Amended Complaint states an actionable civil conspiracy claim and Sidley's motion to dismiss Count IV is denied.

## VI. SECURITIES FRAUD

Siegmund alleges that Xuelian and Wei violated Rule 10b-5 by virtue of their roles in consummating the Freeze-Out Merger. They argue, however, that the Court must dismiss Siegmund's securities fraud claim for failure to state a claim for relief.

### A. Standards

"To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions," instead plaintiffs must "allege some specific factual basis for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir. 2004). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986). This tenet, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. Those "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In short, the complaint must not merely allege a misconduct, but must demonstrate that the pleader is entitled to relief. *See Iqbal*, 556 U.S. at 679.

Under Federal Rule of Civil Procedure 9(b), a plaintiff must plead the circumstances constituting fraud with particularity. In considering a motion to dismiss for failure to plead fraud with particularity, however, courts must also keep in mind the notice pleading standard set forth in Rule 8(a). Courts "must be careful to harmonize the directives of Fed. R. Civ. P. 9(b) with the broader policy of notice pleading." *SEC v. Physicians Guardian Unit Inv. Trust ex rel. Physicians Guardian, Inc.*, 72 F. Supp. 2d 1342, 1352 (M.D. Fla. 1999) (citing *Friedlander v. Nims*, 755 F.2d 810, 810 (11th Cir. 1985)). According to the Eleventh Circuit, "Rule 9(b) is satisfied if the complaint sets forth '(1) precisely what statements were made in what documents

or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir.1997)).

Finally, plaintiffs alleging securities fraud under Section 10(b) of the Exchange Act and Rule 10b-5 must satisfy the heightened pleading standards of the Private Securities Litigation Reform Act ("Reform Act"). These pleading standards include stringent requirements for pleading scienter. *See* 15 U.S.C. § 78u-4(b)(1)–(2). "[F]or all private 10b-5 claims requiring proof of scienter, 'the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind [*i.e.*, scienter].'" *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (citing 15 U.S.C. § 78u-4(b)(2)). The complaint must establish this strong inference "for each defendant with respect to each violation." *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1016 (11th Cir. 2004). However, even under the heightened pleading standards of the Reform Act, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011). Furthermore, the Court "must consider the complaint in its entirety." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 310 (2007).

## B. Section 10(b) of the Exchange Act

Section 10(b) of the Exchange Act makes it illegal "for any person . . . directly or indirectly . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance" that violates the Securities and Exchange Commission's rules protecting investors. 15 U.S.C. § 78j. Rule 10b-5—promulgated under Section 10(b)—renders it unlawful to (a) "make any untrue statement of a material fact or to

omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading"; (b) "employ any device, scheme, or artifice to defraud"; or (c) "engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5 (2000).

Claims under Subsection (b) of Rule 10b-5 involve alleged misrepresentations or omissions. The Eleventh Circuit has explained that "a securities fraud claim based on failure to reveal information to investors . . . has six elements: (1) a material . . . omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the . . . omission; (5) economic loss; and (6) a causal connection between the material . . . omission and the loss, commonly called 'loss causation.'" *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1236–37 (11th Cir. 2008) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005)).

In contrast, claims under Subsections (a) and (c) of Rule 10b-5 involve allegations of a deceptive or manipulative scheme—*i.e.*, "scheme liability." Scheme liability claims are distinct from claims under Rule 10b-5(b). "Rule 10b–5(b) claims are based solely on deceptive statements or omissions, whereas scheme liability claims involve deceptive conduct, which may include deceptive statements or omissions but must also include additional conduct." *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1192 (D. Or. 2015). A defendant engages in a scheme that violates Rule 10b-5(a) and (c) when he "commits deceptive or manipulative acts in furtherance of a fraudulent scheme." *SEC v. Brennan*, 2013 WL 12091655, at *2 (S.D. Fla. Dec. 10, 2013). Conduct is deceptive when it has "the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme." *Id.*

The Supreme Court has explained that a plaintiff bringing a scheme liability claim still must allege the elements of securities fraud. *See Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 158 (2008). However, "[b]ecause scheme liability does not require an allegation that the defendants made a statement, claims brought under Rule 10b–5(a) and (c) need not comport with Subsection (b)(1) of the [Reform Act], which requires that plaintiffs set forth each

statement alleged to have been misleading, and facts giving rise to this belief." *In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 473 (S.D.N.Y. 2017) (internal quotations and punctuation omitted). Accordingly, to state a federal securities fraud claim based on a deceptive scheme, a plaintiff must allege: "(1) the defendant committed a deceptive or manipulative act in furtherance of the alleged scheme; (2) scienter; (3) a connection between the alleged deceptive or manipulative act and the purchase or sale of a security; (4) reliance upon the alleged deceptive or manipulative act; (5) economic loss; and (6) loss causation." *In re Galena*, 117 F. Supp. 3d at 1192 (citing *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2406 (2014)).

## C. Analysis of Siegmund's Securities Fraud Claim Against Xuelian and Wei

Siegmund alleges that, while Directors and Officers of Linkwell, Xuelian and Wei violated Rule 10b-5(a) and (c) by "covertly engineering" the Freeze-Out Merger and intentionally concealing the Merger from Linkwell's shareholders despite their fiduciary duty to disclose that material information. He contends that this deceptive scheme deprived Linkwell's shareholders of their stock "through the unilateral sale of their shares without payment of fair value" and "improperly prevented Plaintiff and Class members from moving to enjoin the Freeze-Out Merger prior to its consummation."

Xuelian and Wei challenge multiple aspects of Siegmund's securities fraud claim against them. Specifically, they contend that Siegmund's Amended Complaint fails to establish the following elements of a scheme liability claim: (i) a deceptive act or omission; (ii) scienter; (iii) reliance; and (iv) causation.

### 1. Pleading Deception

As already discussed, Siegmund alleges that Xuelian and Wei served as Directors and Officers of Linkwell and, as such, owed fiduciary duties to Linkwell and Linkwell's shareholders. He argues that Xuelian and Wei "had an affirmative duty to disclose all material information regarding the transaction to all shareholders, and [] they breached their duty of

disclosure by concealing all material information regarding the Freeze-Out Merger and their interests therein[.]" (Resp. at 13.)

Persuasive and binding case law indicates that Xuelian's and Wei's conduct qualifies as "deceptive" for purposes of a Rule 10b-5 action. Over four decades ago, Judge Friendly explained that "there is deception of the corporation (in effect, of its minority shareholders) when the corporation is influenced by its controlling shareholder to engage in a transaction adverse to the corporation's interests (in effect, the minority shareholders' interests) and there is nondisclosure or misleading disclosures as to the material facts of the transaction." *Goldberg v. Meridor*, 567 F.2d 209, 217 (2d Cir. 1977). Controlling precedent from the Fifth Circuit states, "directors and officers of a corporation are under a duty to disclose their interests in other parties that engage in transactions with the corporation. The existence of such interests in a party to a securities transaction with the corporation is 'material' information to the corporation's shareholders or directors; thus, the failure to disclose such information is 'deceptive' within the meaning of Rule 10b–5." *Alabama Farm Bureau Mut. Cas. Co. v. Am. Fid. Life Ins. Co.*, 606 F.2d 602, 609 (5th Cir. 1979). Courts in this Circuit have interpreted *Goldberg* and *Alabama Farm Bureau* as establishing that "corporate directors owe to their constituents information that will allow the shareholders to take action to enforce responsible action by the corporation and its officers." *Friedlander v. Nims*, 571 F. Supp. 1188, 1198 (N.D. Ga. 1983), *aff'd*, 755 F.2d 810 (11th Cir. 1985).

Seigmund alleges that Xuelian and Wei stood on both sides of the transaction and refused to notify Linkwell shareholders of the deal to prevent them from "seek[ing] an injunction of the Freeze-Out Merger or exercis[ing] appraisal rights." (Am. Compl. ¶ 82.) That conduct mirrors the deception in *Goldberg* and *Alabama Farm Bureau*, where defendants withheld material information in order to lull "potential plaintiffs into not pursuing legal means of preventing a transaction." *Freidlander*, 571 F. Supp. 1188. Xuelian and Wei's failure to disclose material

facts about the Freeze-Out Merger therefore satisfies the "deceptive conduct" element of a scheme liability claim.[5]

## 2. *Pleading Scienter*

To state a securities fraud claim under Rule 10b-5, Siegmund must plead with particularity facts giving rise to a strong inference that Xuelian and Wei acted with a "mental state embracing intent to deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 319 n.3. The allegations about Xuelian's and Wei's mental states must give rise to an inference of scienter that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* He can satisfy this requirement by (i) "alleging facts to show that defendants had both motive and opportunity to commit fraud," or (ii) "alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *In re Alstom SA*, 406 F. Supp. 2d 433, 445 (S.D.N.Y. 2005) (citing *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001)).

Siegmund pleads with particularity sufficient factual allegations to establish that Sidley acted with the requisite intent to "deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 319 n.3. The Amended Complaint explains how the Freeze-Out Merger was intended to relieve Xuelian and Wei of the burden—and potential liability—imposed by the Derivative Action and allow them to obtain control of Likang Disinfectant's assets and operations for no consideration. Notably, Xuelian and Wei already tried to accomplish the latter with their failed 2012 Reverse

---

[5] Xuelian and Wei cite *Santa Fe Ind. Inc. v. Green*, 430 U.S. 462 (1977) to support their position that "failure to provide [] notice would not be a basis for a Section 10(b) claim." (Mot. at 13.) To be sure, *Santa Fe* generally bars Rule 10b-5 claims based on breaches of fiduciary duty. However, Xuelian and Wei ignore the well-known Footnote 14, which seems to provide an exception in cases where, as here, a fiduciary's failure to disclose information about a merger deprived shareholders of the opportunity to enjoin that merger. *See Santa Fe*, 430 U.S. at 474 n.14 (1977) (explaining that "the failure to give advance notice was not a material nondisclosure within the meaning of the statute or the Rule" where the shareholders "could not have acted differently had they had prior notice" because "under Delaware law they could not have enjoined the merger"); *see also Goldberg*, 567 F.2d at 220 (stating that "the availability of an injunctive action under [state] law constituted a sufficient basis for distinguishing the conclusion in [Footnote 14 of *Santa Fe*]"); *see also Friedlander*, 571 F. Supp. at 1196–97 (noting that "the *Goldberg* line of cases" interpreted Footnote 14 as support for the position that "failure to disclose breaches of fiduciary duty is actionable under Rule 10b–5" where such failure deprives shareholders of their injunction remedy); Margaret V. Sachs, *Judge Friendly and the Law of Securities Regulation: The Creation of a Judicial Reputation*, 50 SMU L. Rev. 777 (1997) (explaining that in *Goldberg*, Judge Friendly interpreted Footnote 14 to mean "that shareholders who had the right to enjoin a merger under state law had a concomitant right to use Rule 10b-5").

Merger. Thus, Siegmund clearly establishes that Xuelian and Wei had a compelling motive to effect the Freeze-Out Merger. *See In re Alstom SA*, 406 F. Supp. at 445. Given these objectives, Xuelian's and Wei's failure to notify Siegmund and other Class Members of the Freeze-Out Merger reflects a calculated attempt to prevent Linkwell's shareholders from enjoining the deal or taking other steps "to enforce responsible action by the corporation and its officers." *Friedlander*, 571 F. Supp. at 1198. Accordingly, Siegmund has pled facts with sufficient particularity to show that Xuelian and Wei acted with the requisite scienter.

### 3. *Pleading Reliance and Causation*

Finally, Xuelian and Wei contend that Siegmund's securities fraud claim must fail because he cannot establish reliance and causation. The Supreme Court has emphasized that "[r]eliance by the Plaintiff upon Defendant's deceptive acts is an essential element of the § 10(b) private cause of action." *Stoneridge*, 552 U.S. at 149. Requiring plaintiffs to establish reliance ensures that the "requisite causal connection" between the defendant's deception and the plaintiff's harm "exists as a predicate for liability." *Id.* (citing *Basic Inc.*, 485 U.S. at 243 and *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 154 (1972)).

In *Friedlander*, a corporation's management "decided to effect a series of transactions that ended with the minority shareholders being hopelessly frozen out of continued participation in the company." 571 F. Supp. at 1190. Management's failure to disclose the transaction—a violation of fiduciary duties—had the effect of "lulling [the minority shareholders] into not pursuing legal means of preventing a transaction because they did not see that the true circumstances, if brought to light in court, would support an injunction to stop the transaction." *Id.* The Court found that the Class Representative's decision not to initiate litigation to enjoin the transaction "had been materially affected by a failure of information" and "in that sense he relied upon [management's] disclosure." *Id.* Accordingly, the Court held that the lead plaintiff had "shown sufficient reliance to state a claim." *Id.*

The same rationale applies in this case. As in *Alabama Farm Bureau*, Linkwell's shareholders "could have sought injunctive relief [under Florida law] to block the [Freeze-Out Merger] if they had been aware of this scheme." 606 F.2d at 614. And like the plaintiff in *Goldberg*, Siegmund alleges that he and other Linkwell shareholders "would not have been without remedy if the alleged facts had been disclosed." 567 F.2d at 219. Thus, Xuelian and Wei's failure to disclose material information about the Freeze-Out Merger was "a substantial factor in determining [Siegmund's] course of conduct which resulted in his failure to [enjoin the transaction] and the alleged loss caused by the transaction." *Friedlander*, 571 F. Supp. at 1197. Siegmund therefore has satisfied the elements of reliance and causation.

Based on the analysis above, Siegmund has successfully stated an actionable securities fraud claim against Xuelian and Wei. Accordingly, Xuelian and Wei's motion to dismiss Siegmund's claim under Section 10(b) of the Exchange Act and Rule 10b-5 (Count I) is denied.

## VII. CONCLUSION

Based on the Court's evaluation of Siegmund's claims against Xuelian and Wei, and the arguments for and against dismissal of those claims, it is

**ADJUDGED** as follows:

(1) Xuelian and Wei's motion to dismiss Count I (securities fraud under Rule 10b-5) is DENIED

(2) Xuelian and Wei's motion to dismiss Count II (breach of fiduciary duty) is DENIED.

(3) Xuelian and Wei's motion to dismiss Count IV (civil conspiracy) is DENIED.

(4) Xuelian and Wei's motion to dismiss for insufficient service of process is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this _____ of April 2018.

_____

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record