UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-cv-62506 (FAM) (LFL)

JULIE SIEGMUND and SETH LIPNER, as
Successor Co-Trustees of THE FREDERICK
SIEGMUND LINKWELL CORP. CLAIMS
LIVING TRUST DATED JULY 31, 2018,
Individually and on Behalf of All Others
Similarly Situated,

                              Plaintiffs,

v.

XUELIAN BIAN, WEI GUAN,
SIDLEY AUSTIN LLP, SHANGHAI YINLING
ASSET MANAGEMENT CO., LTD., LEADING
FIRST CAPITAL LIMITED and LEADING
WORLD CORPORATION,

                              Defendants.
_____/

**CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF CLASS
SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND PLAN
OF ALLOCATION, AND INCORPORATED MEMORANDUM OF LAW**

Michael A. Fischler
**Fischler & Friedman, P.A.**
1000 South Andrews Avenue
Fort Lauderdale, Florida 33316

Charles J. Hecht
Daniel W. Krasner
Malcolm T. Brown
Daniel Tepper
**Wolf Haldenstein Adler
 Freeman & Herz LLP**
270 Madison Avenue
New York, New York 10016

## **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND AND PROCEDURAL HISTORY ......................................... 2

       A.    Factual Background ................................................................................ 2

       B.    Procedural History ................................................................................. 3

       C.    Settlement Negotiations ......................................................................... 5

       D.    The Settlement ....................................................................................... 5

       E.    The Notice of Settlement ....................................................................... 6

III.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE PROPOSED
       SETTLEMENT .................................................................................................... 7

       A.    The Approved Notice Program Gave the Best Practicable Notice to Class
             Members and Satisfied Rule 23 and Due Process .................................. 8

       B.    The Settlement is Fair, Reasonable and Adequate .................................. 9

             1.    The Settlement is the Product of Adequate Representation
                   and Arm's-Length Negotiation ................................................... 10

             2.    The Settlement Relief Provided for the Class is Far More than
                   Adequate ..................................................................................... 12

             3.    The Settlement Treats Class Members Equitably Relative to Each
                   Other ........................................................................................... 14

IV.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION .......................... 15

V.     THE COURT SHOULD GRANT FINAL CERTIFICATION
       OF THE SETTLEMENT CLASS ...................................................................... 16

VI.    CONCLUSION ................................................................................................. 20

## **TABLE OF AUTHORITIES**

**CASES**                                                                                                        **Page(s)**

*Affiliated Ute Citizens of Utah v. United States*,
    406 U.S. 128 (1972).................................................................................................20

*Amchem Prod., Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................................17, 19, 20

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013)...............................................................................................19

*Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*,
    211 F.R.D. 457 (S.D. Fla. 2002)............................................................................7

*Bennett v. Behring Corp.*,
    96 F.R.D. 343 (S.D. Fla. 1982), *aff'd,* 737 F.2d 982 (11th Cir. 1984) .................. 7, 9, 10, 13

*Borcea v. Carnival Corp.*,
    238 F.R.D. 664 (S.D. Fla. 2006).........................................................................17

*In re Checking Account Overdraft Litig.*,
    275 F.R.D. 666 (S.D. Fla. 2011).........................................................................18

*Cheney v. Cyberguard Corp.*,
    213 F.R.D. 484 (S.D. Fla. 2003).........................................................................20

*City of Los Angeles v. Bankrate, Inc.*,
    No. 14-cv-81323, 2016 U.S. Dist. LEXIS 115071 (S.D. Fla. Aug. 24, 2016) ......................5, 19

*Cnty. of Monroe v. Priceline.com, Inc.*,
    265 F.R.D. 659 (S.D. Fla. 2010).........................................................................17

*Cox v. Am. Cast Iron Pipe Co.*,
    784 F.2d 1546 (11th Cir. 1986), *cert. denied*, 479 U.S. 883 (1986) ........................... 17

*Fabricant v. Sears Roebuck & Co.*,
    202 F.R.D. 310 (S.D. Fla. 2001).........................................................................19

*Francisco v. Numismatic Guar. Corp. of Am.*,
    No. 06-61677-Civ, 2008 U.S. Dist. LEXIS 125370 (S.D. Fla. Jan. 30, 2008)..........................12

*In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)...................................................................................11

*Great Neck Capital Appreciation Inves. P'ship, L.P.*
*v. PriceWaterHouseCoopers, L.L.P.*,
   212 F.R.D. 400 (E.D. Wis. 2002) ........................................................................13

*Howell v. JBI, Inc.*,
   298 F.R.D. 649 (D. Nev. 2014)...............................................................................5

*Ingram v. Coca-Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001)..........................................................................10

*Kennedy v. Tallant*,
   710 F.2d 711 (11th Cir. 1983) ..............................................................................19

*Kilgo v. Bowman Trans.*,
   789 F.2d 859 (11th Cir. 1986) ..............................................................................17

*Kirkpatrick v. J.C. Bradford & Co.*,
   827 F.2d 718 (11th Cir. 1987) ..............................................................................20

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004) ............................................................................20

*Kornberg v. Carnival Cruise Lines, Inc.*,
   741 F.2d 1332 (11th Cir. 1984) ............................................................................18

*In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*,
   No. 13 Civ. 214, 2017 U.S. Dist. LEXIS 85004 (S.D.N.Y. May 22, 2017)................5

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   MDL No. 1290, 2003 WL 22037741 (D.D.C. June 16, 2003) ...................................9

*Lyons v. Georgia-Pacific Corp. Salaried Emp. Ret. Plan*,
   221 F.3d 1235 (11th Cir. 2000) ............................................................................19

*Mashburn v. Nat'l Healthcare, Inc.*,
   684 F. Supp. 660 (M.D. Ala. 1988) .......................................................................12

*In re Mexico Money Transfer Litig.*,
   164 F. Supp. 2d 1002 (N.D. Ill. 2000) ....................................................................9

*Montoya v. PNC Bank, N.A.*,
   No. 14-20474-CIV, 2016 U.S. Dist. LEXIS 50315 (S.D. Fla. April 13, 2016).........11

*Morgan v. Public Storage*,
   301 F. Supp. 3d 1237 (S.D. Fla. 2016) ..................................................................11

*Morrison v. Nat'l Australia Bank Ltd.*,
   561 U.S. 247 (2010) ........................................................................................ 15-16

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ............................................................................................ 8, 9

*Murray v. Auslander*,
   244 F.3d 807 (11th Cir. 2001) .................................................................................18

*Nelson v. Mead Johnson & Johnson Co.*,
   484 F. App'x 429 (11th Cir. 2012) ...........................................................................9

*In re Nissan Motor Corp. Antitrust Litig.*,
   552 F.2d 1088 (5th Cir. 1977) .................................................................................8

*In re PAR Pharm. Secs. Litig.*,
   No. 06-3226, 2013 U.S. Dist. LEXIS 106150 (D.N.J. July 29, 2013) .........................................5

*Perez v. Asurion Corp.*,
   501 F. Supp. 2d 1360 (S.D. Fla. 2007) .......................................................................8

*In re Pet Food Prod. Liab. Litig.*,
   629 F.3d 333 (3d Cir. 2010) ............................................................................... 14-15

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) ................................................................................15

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) .............................................................................................8

*Poertner v. Gillette Co.*,
   618 F. App'x 624 (11th Cir. 2015) .........................................................................14

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
   148 F.3d 283 (3d Cir. 1998) ...................................................................................8

*In re Rayonier Sec. Litig.*,
   No. 14-cv-1395, 2017 U.S. Dist. LEXIS 167508 (M.D. Fla. Oct. 5, 2017) ..............................15

*Redwen v. Sino Clean Energy, Inc.*,
   No. CV 11-3936, 2013 U.S. Dist. LEXIS 100275 (C.D. Cal. July 9, 2013) ............................16

*Ressler v. Jacobson*,
   822 F. Supp. 1551 (M.D. Fla. 1992) ........................................................................12

*Ressler v. Jacobson*,
   149 F.R.D. 651 (M.D. Fla. 1992) ............................................................................11

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
  297 F.R.D. 683 (S.D. Fla. 2014) ........................................................................9, 10, 11

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
  601 F.3d 1159 (11th Cir. 2010) .......................................................................19

*SEC v. Berbel*,
  No. 17-23572-CIV-MORENO,
  2018 U.S. Dist. LEXIS 31746 (S.D. Fla. Feb. 26, 2018)....................................16

*In re Shell Oil Refinery*,
  155 F.R.D. 552 (E.D. La. 1993)........................................................................12

*In re Sunbeam Sec. Litig.*,
  176 F. Supp. 2d 1323 (S.D. Fla. 2001) .............................................................11

*Thompson v. Metrop. Life Ins. Co.*,
  216 F.R.D. 55 (S.D.N.Y. 2003) ........................................................................13

*Thorpe v. Walter Inv. Mgt. Corp.*,
  No. 14-cv-20880, 2016 U.S. Dist. LEXIS 144133 (S.D. Fla. Oct. 14, 2016) ...................13, 15

*In re U.S. Oil and Gas Litig.*,
  967 F.2d 489 (11th Cir. 1992) ............................................................................7

*Walco Inv., Inc. v. Thenen*,
  168 F.R.D. 315 (S.D. Fla. 1996).......................................................................18, 20

*Warren v. City of Tampa*,
  693 F. Supp. 1051 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989) ...............11

*Wolff v. Cash 4 Titles*,
  No. 03-22778-CIV, 2012 U.S. Dist. LEXIS 153786 (S.D. Fla. Sept. 26 2012)........................14

*Xuechen Yang v. Focus Media Holding, Ltd.*,
  No. 11 Civ. 9051, 2014 U.S. Dist. LEXIS 126738 (S.D.N.Y. Sept. 4, 2014) ...............5

## STATUTES & RULES

Federal Rules of Civil Procedure
  Rule 23 ...............................................................................................................8, 20
  Rule 23(a)..........................................................................................................17, 20
  Rule 23(a)(3).....................................................................................................18
  Rule 23(a)(4).....................................................................................................19

Rule 23(b)(3) ...................................................................................................17, 19, 20

Rule 23(e) ...............................................................................................................1, 7, 10

Rule 23(e)(2) ...................................................................................................9, 10, 12, 15

Rule 23(e)(2)(C) ...................................................................................................................14

Rule 23(e)(3) ...................................................................................................................14

Rule 23(f) ...................................................................................................................13

Rule 23 advisory committee notes .......................................................................10, 14

Securities Exchange Act of 1934, Section 10(b) ...........................................................3

Rule 10(b)-5 ...................................................................................................................3

## OTHER AUTHORITIES

4 Newberg on Class Actions § 11.41 (4th ed. 2002) ...................................................8

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Court-appointed Class Representatives Julie Siegmund and Seth Lipner respectfully move for final approval of Class Settlement, certification of Class, and Plan of Allocation.[1]

## I.    INTRODUCTION

The Settlement that Class Representatives obtained for the benefit of the proposed Class is a superlative result and merits the Court's approval. Prior to entering into the Stipulation, Class Representatives and Settling Defendants thoroughly weighed the strengths and weaknesses of the claims and defenses and the Action's procedural posture. The Settlement is the product of the diligent efforts of Class Representatives and Class Counsel in prosecuting the Action in the face of determined opposition, and hard-fought, arm's-length negotiations before Jed D. Melnick, Esq. of JAMS, who has settled many complex securities class actions.

Before the deduction of Court-awarded attorneys' fees and expenses, Administration Expenses and Notification costs, the $6 million Settlement Amount will yield an estimated average recovery (assuming all eligible Class Members file valid claims valued at 100%) of $29.93 per share of Linkwell Corporation stock to Class Members[2] – almost 34 times the $0.88 per share that they received in the Merger. This represents a recovery of approximately 33% of the damages estimated by Class Representatives' damages expert after he learned that 10% of Linkwell had been sold to an allegedly independent third party just 17 months before the Merger closed. The Settlement also represents over 78% of the fair value of Linkwell as of September 19, 2014 according to the rebuttal report of Settling Defendants' damages expert. Insofar as Class Members owned 200,492 (or approximately 37%) of the total 549,000 outstanding shares of Linkwell common stock as of the date the Merger was approved, the Settlement represents in

---

[1] Class Representatives respectfully refer the Court to the accompanying declaration of Daniel W. Krasner in Support of: Class Representatives' Motion for Final Approval of Class Settlement, Certification of Class, and Plan of Allocation; and Class Counsel's Motion for An Award of Attorneys' Fees and Expenses and Service Award ("Krasner Declaration" or "Krasner Decl.") for a detailed description of the allegations and procedural history of the Action. Unless otherwise noted, capitalized terms used herein shall have the same meaning as in the Stipulation and Settlement Agreement dated May 1, 2019 (DE No. 295-1) (the "Stipulation").

[2] As noted above, the $29.93 per share amount is an estimate. A Class Member's actual recovery will depend on several factors, including: (1) the number of claims filed; (2) the country of residence of Class Members; (3) the amount of Notification Costs and Administration Expenses; and (4) the amount of the Service Award and attorneys' fees and costs awarded by the Court to class counsel.

excess of 210% of the Class's share (37%) of the fair value of Linkwell based on the rebuttal report of Settling Defendants' damages expert. This is an excellent recovery by any standard.

Accordingly, Class Counsel, who are highly experienced in prosecuting securities action litigation, have concluded that the Settlement is in the best interests of the Class and recommend its approval to the Court. Accordingly, Class Representatives respectfully submit the Court should approve the Settlement.

## II.   BACKGROUND AND PROCEDURAL HISTORY

### A.   Factual Background

The Court is familiar with the facts giving rise to the claims in this Action as set forth in detail in Class Representatives' previously filed Motion for Preliminary Approval of Class Settlement, Preliminary Certification of Class, Approval of Form and Manner of Class Notice, and Date for Hearing on Final Approval of Settlement (DE No. 294) ("Preliminary Approval Motion"), as well as in the Krasner Declaration filed concurrently herewith. Class Representatives reference the facts below to the extent they are relevant to the issues raised in this motion.

On December 26, 2012, the late Frederick Siegmund ("Siegmund") brought the Derivative Action on behalf of Linkwell alleging, among other things, breaches of fiduciary duty by Xuelian Bian ("Bian") and Wei Guan ("Guan") as officers and directors of Linkwell.

In April 2014, Sidley Austin LLP ("Sidley") was retained by Linkwell's direct operating subsidiary to represent Linkwell in the one-step, go-private merger transaction that would, among other things, divest Sigmund and all other similarly situated shareholders of their Linkwell stock.

On September 19, 2014, the Merger was approved at the Special Meeting of Linkwell shareholders ("Special Meeting") by the affirmative vote of Bian, Guan, and certain other Linkwell shareholders who resided in China. In this Action, Siegmund asserted that he and other similarly situated Linkwell shareholders did not receive notice of the Merger or the Special Meeting.[3] Because shareholders did not receive notice, Siegmund asserted in this Action that he and other Linkwell shareholders were denied the opportunity to exercise their rights and seek to enjoin the vote on the Merger at the Special Meeting.

As a result of the consummation of the Merger, Linkwell shareholders' stock was

---

[3] Sidley contended that Linkwell made arrangements for notice to be mailed to all record and non-U.S. shareholders.

cancelled in exchange for the payment of $0.88 per share. On April 11, 2016, the Derivative Action was dismissed for lack of shareholder standing because Siegmund no longer owned Linkwell stock as a result of the Merger. In August 2018, the Court of Appeals affirmed the dismissal of the Derivative Action without prejudice.

Siegmund commenced this Action on October 24, 2016 alleging claims against Defendants for violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder (collectively, "10b-5"), breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and civil conspiracy. Siegmund asserted that he and other similarly situated Linkwell shareholders were injured because the Merger was undertaken to wrongfully extinguish the valuable claims asserted on behalf of Linkwell in the Derivative Action; and that the Merger was completed without due notice to Siegmund and other similarly situated shareholders, which unlawfully denied them their rights to move to enjoin the vote on the Merger or exercise other appropriate remedies to obtain fair value for their Linkwell stock.

### B.     Procedural History

On December 15, 2016, Sidley moved to dismiss the Action for failure to state a claim and lack of personal jurisdiction. On September 29, 2017, the Court entered an Order (DE No. 57) dismissing Siegmund's initial complaint, and granting leave to amend. On October 19, 2017, Siegmund filed the First Amended Class Action Complaint (DE No. 60) ("Complaint").

Sidley, Bian, and Guan subsequently moved to dismiss the Complaint. On April 2, 2018, the Court entered an Order (DE No. 96) granting Sidley's motion to dismiss the 10b-5 claims against it in the Complaint, and denying the motion in all other respects. On the same day, the Court entered another Order (DE No. 97) denying the motion of Bian and Guan to dismiss in its entirety. On April 3, 2018, the Court entered a Scheduling Order Setting Trial (DE No. 98) that, among other things, established a June 15, 2018 deadline to complete fact and expert discovery. The Court also entered an Order (DE No. 99) referring the case to mediation.

Settling Defendants filed answers to the Complaint on April 20, 2018 and May 14, 2018, respectively. A mediation session was conducted on June 5, 2018. The parties (Siegmund, Bian, Guan, and Sidley), however, were unable to reach agreement.

As a consequence of the June 15, 2018 discovery deadline, discovery began shortly after the Settling Defendants served their answers to the Complaint. Discovery was highly contentious

and the parties engaged in extensive motion practice related to fact and expert discovery.[4] On June 12, 2018, the Court entered an Order (DE No. 148) extending the discovery deadline to September 7, 2018. By that deadline, counsel for the parties had conducted the depositions of 12 fact and expert witnesses. Over 30,000 pages of documents were produced in direct and third-party discovery. In addition, the parties stipulated that documents previously produced and depositions previously conducted in the Derivative Action could also be used in this Action without replication.

On September 5, 2018, Siegmund moved for certification of the Class, his appointment as Class Representative, and the appointment of his counsel, Wolf Haldenstein Adler Freeman & Herz LLP, as Class Counsel (DE No. 222). On September 21, 2018, Settling Defendants moved for summary judgment (DE Nos. 237-43).

On September 27, 2018, the Court entered an Order of Continuance and Order Revising Pretrial Deadlines (DE No. 246) further extending the discovery deadline to March 8, 2019. A second mediation session was held on September 28, 2018. Although the parties were unable to reach an agreement, they made progress and continued to negotiate. In light of the parties' ongoing settlement discussions, their respective motions for class certification and summary judgment were withdrawn on October 2, 2018, without prejudice to the parties' right to renew their motions (DE Nos. 249-51).

---

[4] *See, e.g.*, Siegmund's Motion to Compel Sidley to Produce Documents Withheld as Privileged (DE No. 132); Individual Defendants' Motion for Protective Order (DE No. 145); Siegmund's Motion to Compel Individual Defendants to Appear for Depositions (DE No. 156); Siegmund's Motion to Compel Sidley to Produce Document Designated as Privileged and Inadvertently Disclosed (DE No. 157); Siegmund's Motion for Determination that Individual Defendants Waived Attorney-Client Privilege (DE No. 160); Siegmund's Motion for Reconsideration of Omnibus Order on Discovery Motions (DE No. 186); Siegmund's Motions to Compel Joseph Chan and Thomas A. Paskowitz to Appear for Further Depositions and Answer Questions (DE Nos. 187-88); Siegmund's Motion for Order Requiring Individual Defendants to Appear for Deposition (DE No. 211); Individual Defendants' Objection to Order Granting Motion for Reconsideration (DE No. 214); Siegmund's Motion to Strike Rebuttal Reports of Sidley's Testifying Experts (DE No. 218); Siegmund's Motion to Compel Sidley to Produce Documents Withheld as Privileged (DE No. 219); Sidley's Motion to Strike Supplemental Report of Expert Joseph Thompson (DE No. 254); Siegmund's Motion for Order Granting Sanctions against Individual Defendants for Failure to Comply with Discovery Order (DE No. 256); Siegmund's Motion for Discovery Sanctions against Sidley (DE No. 262); Sidley's Motion to Compel Siegmund to Produce Documents (DE No. 266). In total, 28 discovery and related motions were filed and ruled upon by Magistrate Judge Louis.

Siegmund died on November 23, 2018. On February 8, 2019, Julie Siegmund and Seth Lipner moved to be substituted in the Action in place of Siegmund (DE No. 281). The Court granted the substitution motion on February 22, 2019 (DE No. 284).

### C.    Settlement Negotiations

Parallel to the litigation of the Action, preliminary settlement negotiations began in late spring 2018. During the negotiations, counsel to the parties discussed the merits of the case, their opposing views of the facts and law relative to the merits and potential relief for the proposed Class, and exchanged counter-proposals for a potential settlement. Following the two mediation sessions and numerous additional communications among counsel to the parties, Class Representatives and Sidley executed a memorandum of understanding dated February 5, 2019. Class Representatives thereafter reached an agreement-in-principle with Bian and Guan, the parties executed a superseding memorandum of understanding, and subsequently negotiated and executed the Stipulation. The negotiations between the parties were undertaken in good faith and conducted at arm's length before Mr. Melnick of JAMS, a well-respected and experienced mediator.[5] *See* Krasner Decl. ¶¶ 33-38.

### D.    The Settlement

The Stipulation provides that upon the Effective Date of the Settlement, Class Members are "(a) deemed to have forever and irrevocably released all Settled Claims; and (b) enjoined from prosecuting, either directly or indirectly, any Settled Claims against any of the Defendants." Stipulation ¶ 46. The Settled Claims are to be settled for a total of $6 million in cash, which includes all attorneys' fees and expenses, and all costs related to the Class and Settlement administration. *Id.* ¶¶ 35, 50-53, 61, 71. The Stipulation further provides that Class Counsel intends to request attorneys' fees and reimbursement of litigation costs and expenses. *Id.* ¶ 70. The Claims Administrator will determine the *pro rata* share of the Net Settlement Fund based upon the Plan of Allocation proposed by Class Counsel and approved by the Court.

---

[5] Mr. Melnick's credentials are set forth here: https://www.jamsadr.com/melnick/. *See also City of Los Angeles v. Bankrate, Inc.*, 2016 U.S. Dist. LEXIS 115071, at *50-51 (S.D. Fla. Aug. 24, 2016); *In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, 2017 U.S. Dist. LEXIS 85004, at *23 (S.D.N.Y. May 22, 2017); *Xuechen Yang v. Focus Media Holding, Ltd.*, 2014 U.S. Dist. LEXIS 126738, at *13-*14 (S.D.N.Y. Sept. 4, 2014); *Howell v. JBI, Inc.*, 298 F.R.D. 649, 653 (D. Nev. 2014); *In re PAR Pharm. Secs. Litig.*, 2013 U.S. Dist. LEXIS 106150, at *8 (D.N.J. July 29, 2013).

### E.      The Notice of Settlement

In accordance with the Court's Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement (DE No. 300) ("Preliminary Approval Order"), Class Counsel retained JND Legal Administration as the Claims Administrator. Krasner Decl. ¶ 47. As set forth in the Declaration of Jack Ewashko Regarding (A) Mailing of Proposed Settlement of Class Action and Proof of Claim and Release Form; (B) Publication of Summary Notice; and (C) Report of Requests for Exclusion Received ("Ewashko Declaration" or "Ewashko Decl.") filed concurrently herewith, JND Legal Administration has scrupulously followed the Court-approved notice procedure set forth in the Preliminary Approval Order.

On May 2, 2019, Class Counsel provided JND Legal Administration with the Linkwell stockholders list as of August 15, 2014, which contained the names and addresses, in the United States and abroad, for 91 Linkwell record shareholders, including Cede & Co. *See* Krasner Decl. ¶ 48. On May 10, 2019, Class Counsel provided JND Legal Administration with the non-objecting beneficial owner data they received from Settling Defendants' Counsel, which contained the names and last known addresses, in the United States and abroad, for 870 Linkwell shareholders as of September 19, 2014. *Id.* On August 2, 2019, JND Legal Administration mailed copies of the Notice and Proof of Claim and Release Form ("Notice Packet") by first-class mail, postage prepaid, to 5,044 potential Class Members. *See* Ewashko Decl. ¶¶ 3-5.

Additionally, because the majority of potential Class Members are beneficial purchasers whose Linkwell stock is held in "street name," *see* Krasner Decl. ¶ 49, on August 2, 2019, JND Legal Administration posted the Notice on the DTC Lens, and subsequently reached out via telephone to 100 of the largest firms from the broker/nominee community. JND Legal Administration also caused reminder postcards to be mailed by First-Class mail, postage prepaid, to the nominees in its proprietary broker database who did not respond to the initial mailing. *See* Ewashko Decl. ¶¶ 4, 6-8.

Following the initial mailing, JND Legal Administration received an additional 317 unique names and addresses of potential Class Members from individuals or nominees requesting Notice Packets to be mailed to such persons or entities. It promptly sent and continues to promptly send Notice Packets to each such name and address. In addition, during this same time period, JND Legal Administration received requests from nominee purchasers for 775 Notice Packets that will be forwarded by the nominees to potential Class Members. JND Legal

Administration promptly provided the requested Claim Packets to the nominee purchasers. *See* Ewashko Decl. ¶¶ 7-10.

In the aggregate, as of October 14, 2019, JND Legal Administration has mailed 6,136 Notice Packets to potential Class Members and nominees. *Id*. ¶ 11.

Additionally, on August 5, 2019, in accordance with the Preliminary Approval Order, the Summary Notice was published in the *Investor's Business Daily* and *The New York Times (International)*, and issued over *PR Newswire*. *Id*. ¶ 12. JND Legal Administration also established and maintains a website dedicated to the Settlement that contains important information such as the exclusion and objection deadlines, as well as important documents such as the Complaint, Stipulation, Preliminary Approval Order, Notice and Proof of Claim. *Id.* ¶ 14.

On August 2, 2019, JND Legal Administration established and continues to maintain a dedicated toll-free telephone number (833-285-1327) to provide answers to frequently asked questions ("FAQs") and to allow potential Class Members to request Notice Packets. As of October 14, 2019, JND Legal Administration has received 36 calls. *Id.* ¶ 13.

As of October 14, 2019, no objections or requests for exclusion have been received. *Id*. ¶ 15. The deadline for filing objections is October 29, 2019.

## III.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE PROPOSED SETTLEMENT

Rule 23(e) requires judicial approval for the settlement of claims brought on a class basis. Fed. R. Civ. P. 23(e). "[S]uch approval is committed to the sound discretion of the district court." *In re U.S. Oil and Gas Litig*., 967 F.2d 489, 493 (11th Cir. 1992). In exercising that discretion, courts are guided by the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984). The policy favoring settlement is especially applicable to class actions, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See*, *e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases).

### A.    The Approved Notice Program Gave the Best Practicable Notice to Class Members and Satisfied Rule 23 and Due Process

"For a court to exercise jurisdiction over the claims of absent Class members, there must be minimal procedural due process protection." *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007). This requires that class members receive notice that is "the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)). Such notice "should describe the action and the plaintiffs' rights in it," as well as provide each class member "with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." *Id.*

The Court previously approved the form and content of the Notice and the notice program described in the Stipulation, finding it is:

> the best practicable notice under the circumstances and is reasonably calculated to inform the Class of the pendency of this action, the Settlement terms, certification of the Class, Class Counsel's application for attorneys' fees and expenses, request for a Service Award, and Class Members' rights to opt-out of the Class or object to the Settlement.

Preliminary Approval Order ¶ 9. The notice program was and continues to be implemented in accordance with the Preliminary Approval Order. *See* Point II(e), *supra* (describing implementation of the notice program in detail, and noting the absence of any objections).

The approved notice program provides the Court with personal jurisdiction over all members of the Class because they have received the notice required for due process. *See Shutts*, 472 U.S. at 811-12; *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 306 (3d Cir. 1998) ("[T]he district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class."). As required, the Court-approved Notice described "the substantive claims … [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977). The Notice sent to Class Members, among other things, described the Class, the release, and the amount and proposed distribution of the Settlement proceeds, and informed Class members of

their right to opt-out and object, the procedures for doing so, and the time and place of the Fairness Hearing.

In short, Class Members were provided with the best practicable notice "reasonably calculated, under [the] circumstances, to apprise [them] of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. Accordingly, the Court has jurisdiction over absent Class Members and due process is satisfied.

> **B.      The Settlement is Fair, Reasonable and Adequate**

The Court should approve a proposed class action settlement where it is 'fair, adequate and reasonable and is not the product of collusion between the parties.'" *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 691 (S.D. Fla. 2014) (Moreno, J.) (quoting *Bennett*, 737 F.2d at 986). In general, a settlement is fair, reasonable, and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam & Clorazepate Antitrust Litig.*, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quotation omitted). Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted). Instead, "[i]n considering the settlement, the district court may rely upon the judgment of experienced counsel for the parties." *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). "Absent fraud, collusion, or the like, the district court 'should be hesitant to substitute its own judgment for that of counsel.'" *Id.* (quoting *Cotton*, 559 F.2d at 1330).

As amended effective December 1, 2018, Rule 23(e)(2) provides four requirements that must be satisfied for a proposed class settlement to win final approval:

> A.  the class representatives and class counsel have adequately represented the class;
>
> B.  the proposal was negotiated at arm's length;
>
> C.  the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> D.  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e). The requirements under the amended Rule 23(e) overlap with the general requirements this Court articulated in *Saccoccio, supra, and* neither displace nor contravene prevailing law in this Circuit. As set forth in greater detail below, the Settlement easily satisfies the criteria for final approval.

### 1.     The Settlement is the Product of Adequate Representation and Arm's-Length Negotiation

The first two factors under Rule 23(e)(2) effective December 1, 2018 – adequate representation of the Class and arm's-length negotiations – examine "the conduct of the litigation and of the negotiations leading up to the proposed settlement." *See* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. Although the Court already found that Class Representatives and Class Counsel "are capable of fairly and adequately protecting the interests of Class Members in connection with the Settlement," Preliminary Approval Order ¶ 4(d), the focus at the final approval stage is on "the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. Pertinent information includes "[t]he conduct of negotiations" including "the involvement of a neutral," as well as "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, [which] may indicate whether counsel negotiating on behalf of the class had an adequate information base." *Id.* These first two factors thus overlap with the Eleventh Circuit's instruction to consider the existence of "fraud or collusion in arriving at the settlement" and "the stage of proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986. Given the extensive, hard-fought litigation that preceded the Settlement, there is no doubt that these factors support final approval.

The Court is well aware of how hard and zealously the parties and their counsel litigated this Action for almost three years before reaching the Settlement, and that Siegmund litigated the related Derivative Action against Bian and Guan, amongst others, for over five years, which included an appeal to the Eleventh Circuit. The history of the case leaves "no doubt that this case has been adversarial, featuring a high level of contention between the parties." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001).

The sharply contested nature of these proceedings (*see, e.g.,* n. 4 *supra,* listing some of the 28 discovery and other motions ruled upon by Judge Louis) evidences the lack of fraud or collusion behind the Settlement. *See, e.g., In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001) ("The Court finds no evidence or even allegations of collusion on the part of

counsel in this case."); *Warren v. City of Tampa*, 693 F. Supp. 1051, 1055 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989) (record showed no evidence of collusion, but to the contrary showed "that the parties conducted discovery and negotiated the terms of settlement for an extended period of time"); *Montoya v. PNC Bank, N.A.*, 2016 U.S. Dist. LEXIS 50315, at *27- *28 (S.D. Fla. April 13, 2016) (internal quotations and citations omitted) ("In considering the settlement, the district court may rely upon the judgment of experienced counsel for the parties. Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel."); *Saccoccio*, 297 F.R.D. at 692 ("Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion."). *See also Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1247 (S.D. Fla. 2016) (The "fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable.").

Class Counsel also negotiated the Settlement vigorously over a period of over eight months. *See* Krasner Decl. ¶¶ 33-38. Class Representatives were represented by experienced counsel at these arm's-length negotiations. *Id.* The lawyers involved are highly experienced in complex commercial and class action litigation. Krasner Decl. ¶ 62, Ex. 1 (Wolf Haldenstein firm resume). During the extensive, adversarial negotiations, the parties exchanged numerous proposals while the litigation continued and intensified on a parallel track. *Id.* The negotiations were informed by a well-developed factual record that enabled Class Counsel to make a reasoned judgments as to the Settlement. *See In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995) (considering "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating"). While "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations," *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992), here Class Representatives reached the Settlement with the benefit of extensive discovery. Over 30,000 pages of documents were produced in direct and third party discovery, and counsel to the parties conducted depositions of 12 fact and expert witnesses. Krasner Decl. ¶ 27. Class Representatives also had the benefit of certain discovery obtained in the Derivative Action.

The extensive factual record allowed Class Counsel to evaluate with confidence the strengths and weaknesses of the claims and prospects for success at class certification, summary judgment, and trial. *See Francisco v. Numismatic Guar. Corp. of Am.*, 2008 U.S. Dist. LEXIS 125370, at *13 (S.D. Fla. Jan. 30, 2008) ("Class Counsel had substantial information to adequately evaluate the merits of the case and weigh the benefits against further litigation."). Before settling, Class Counsel had already developed ample information and performed extensive analyses from which "to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation." *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988).

## 2.    The Settlement Relief Provided for the Class is Far More than Adequate

In evaluating the adequacy of relief provided for the Class, Rule 23(e)(2) instructs courts to account for "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Each factor favors final approval of the Settlement.

The Settlement will provide immediate and substantial benefits to Class Members. As stated in *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993), "The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush." *Id.* (internal quotations and citation omitted). As well as additional delay, continued litigation would carry significant risks to Class Members. While Class Representatives and Class Counsel are confident in the merits of their case, they are also pragmatic and aware of the defenses available to the Settling Defendants as well as the risks inherent in any litigation. For example, Class Representatives would first have to defeat the motions of Settling Defendants for summary judgment. Class Representatives would also have to prevail on a litigated class certification motion, wherein the Settling Defendants would assert numerous arguments against all or parts of the Class. And, while Class Representatives believe they would ultimately be successful, the Settling Defendants would inevitably seek interlocutory

review of class certification rulings via Rule 23(f). Class Representatives' experts, necessary for the presentation of their case at trial, would also have to survive expected *Daubert* challenges.

Given the numerous risks in continuing to litigate these claims, the Settlement cannot be seen as anything but a fair compromise. *See, e.g.*, *Bennett*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial"). *See also Thorpe v. Walter Inv. Mgt. Corp.*, 2016 U.S. Dist. LEXIS 144133, at *9-10 (S.D. Fla. Oct. 14, 2016) (internal quotations and citations omitted) ("A securities case, by its very nature, is a complex animal. Further, complex class actions are notably difficult and notoriously uncertain.").

The Settlement provides substantial relief to the Class Members. As previously noted, before deducting Court-awarded attorneys' fees and expenses, Administration Expenses and Notification Costs, the estimated average recovery (assuming all eligible Class Members file valid claims valued at the full amount of the claim) will yield a recovery almost 34 times the $0.88 per share received under the Merger. Further, because Class Members owned approximately 37% of the equity of Linkwell at the time the Merger was approved, the Settlement represents in excess of 210% of the fair value of Linkwell based on the rebuttal report of Defendants' damages expert.

By any reasonable measure, the Settlement is a significant achievement considering the obstacles that Class Representatives faced and would continue to face in the litigation, including *Daubert* challenges to their experts' methodologies, class certification, interlocutory Rule 23(f) appeals of class certification, motions for summary judgment, trial, and post-trial appeals. Given the substantial benefits that the Settlement provides to Class Members, the Settlement is fair and represents a reasonable and adequate recovery for the Class. *See generally Thompson v. Metrop. Life Ins. Co.*, 216 F.R.D. 55, 64 (S.D.N.Y. 2003) (a settlement must be evaluated "in light of the attendant risks with litigation"); *Great Neck Capital Appreciation Inves. P'ship, L.P. v. PriceWaterHouseCoopers, L.L.P.*, 212 F.R.D. 400, 409-10 (E.D. Wis. 2002) ("The mere possibility that the class might receive more if the case were fully litigated is not a good reason for disapproving the settlement."); *see also Bennett*, 737 F.2d at 986 ("[C]ompromise is the essence of settlement.").

The effectiveness of the Settlement's methods of distributing this relief to Class Members, moreover, cannot be seriously disputed. The process for submitting a claim for cash payment is simple. Claims can be submitted by mail or online and claim forms are straightforward and easy to understand. As the Eleventh Circuit concluded in affirming approval of a settlement with a similar claims process, "the use of a claims process is not inherently suspect," and it is not "particularly difficult or burdensome" to require the completion of a straightforward form that can be submitted either online or by mail. *Poertner v. Gillette Co.*, 618 F. App'x 624, 628 (11th Cir. 2015).

The terms and timing of the requested attorneys' fees further support the adequacy and fairness of the Settlement because the requested 33⅓% fee is reasonable. *See* Krasner Decl. ¶¶ 61-72. *See generally Wolff v. Cash 4 Titles,* 2012 U.S. Dist. LEXIS 153786, at *15-*16 (S.D. Fla. Sept. 26 2012) ("the average percentage award in the Eleventh Circuit mirrors that of awards nationwide – roughly one third.") (compiling cases); *Ressler v. Jacobson*, 149 F.R.D. 651, 655-56 (M.D. Fla. 1992) (*30% or more* of a settlement fund for attorney's fees is "not uncommon in §10(b) common fund cases") (emphasis added).

The final factor identified in Rule 23(e)(2)(C) – consideration of any agreement required to be identified under Rule 23(e)(3) – is inapplicable because there are no other agreements beyond the Stipulation itself, which has been disclosed. Thus, each of the factors set forth in Rule 23(e)(2)(C) and relevant case law as bearing on the adequacy of Settlement's relief supports final approval.

### 3.   The Settlement Treats Class Members Equitably Relative to Each Other

The equitable treatment factor "calls attention to a concern that may apply to some class action settlements – inequitable treatment of some class members vis-a-vis others." *See* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Id.* This factor further supports final approval because the Class Members are treated equitably relative to each other. As described in greater detail in Point IV below, each eligible Class Member or Authorized Claimant will receive his, her or its *pro rata* share of the Net Settlement Fund, subject to adjustments based on their residence and whether they held as record or beneficial owner. *See generally In re Pet Food*

*Prod. Liab. Litig.*, 629 F.3d 333, 346 (3d Cir. 2010) (providing different awards for various class members "do[es] not, without more, demonstrate conflicting or antagonistic interests within the class"); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1146 (8th Cir. 1999) ("[A]lmost every settlement will involve different awards for various class members.").

In sum, all of the factors identified by the Eleventh Circuit and Rule 23(e)(2) strongly support finding that the Settlement is fair, reasonable and adequate.

## IV.   THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

The standard for approving a plan of allocation is whether it is "fair and reasonable." *Thorpe*, 2016 U.S. Dist. LEXIS 144133, at *15; *In re Rayonier Sec. Litig.*, 2017 U.S. Dist. LEXIS 167508, at *6 (M.D. Fla. Oct. 5, 2017) (approving plan of allocation as having a "fair and reasonable basis").

Here, the Plan of Allocation provides that "[f]or each share of Linkwell common stock canceled as a result of the Merger, each Authorized Claimant will receive his, her or its pro rata share of the Net Settlement Fund," and provides that the "Net Settlement Fund shall be distributed *pro rata* to all Authorized Claimants entitled to receive payment." Notice at 15. The Claims Administrator will calculate Authorized Claimants' pro rata share of the Net Settlement Fund and Class Counsel will file a motion seeking approval of the Proof of Claim determinations after administration of the Settlement is complete. Once it is no longer economically feasible to distribute the Net Settlement Fund, Class Counsel will request Court approval of the distribution of any remaining nominal amount. Plaintiffs respectfully submit this is fair.

A particular Authorized Claimant's recovery under the proposed Plan of Allocation will depend upon (a) the country of residence of the Class Member, and (b) and whether such Class Member was a record shareholder of Linkwell. Authorized Claimants that reside in the United States, except for Linkwell record shareholders who did not vote to approve the Merger,[6] will recover their pro rata share of the Net Settlement Fund. The claims of Authorized Claimants that do not reside in the United States, and all Linkwell record shareholders who did not vote to approve the Merger, will recover 40% of their pro rata share of the Net Settlement Fund.

Class Representatives respectfully submit this is reasonable because of substantial questions concerning the merits of claims by non-U.S. resident Class Members and their standing to seek relief. *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 268 (2010)

---

[6] Those few U.S. shareholders of Linkwell that voted to approve the Merger are excluded from the Class since they received the proxy and chose to support the Merger.

(internal quotations omitted) (The federal securities laws "do[] not apply to any person insofar as he transacts a business in securities without the jurisdiction of the United States…."). *Accord SEC v. Berbel*, 2018 U.S. Dist. LEXIS 31746, at *8 (S.D. Fla. Feb. 26, 2018) (Moreno, J.) (internal quotations and citation omitted) ("[T]he federal securities laws apply to transactions where the purchaser incurred irrevocable liability within the United States to take and pay for a security, or [] the seller incurred irrevocable liability within the United States to deliver a security."). It is also reasonable to discount the claims of Authorized Claimants that were Linkwell record shareholders and who did not vote to approve the Merger, because such Class Members received notice of the Merger and, presumably, could have exercised their rights to seek to enjoin the Merger or seek appraisal and chose not to do so.

   "[A] plan of allocation … fairly treats class members by awarding a pro rata share to every Authorized Claimant, even as it sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims…." *Redwen v. Sino Clean Energy, Inc.*, 2013 U.S. Dist. LEXIS 100275, at *29 (C.D. Cal. July 9, 2013) (internal quotations and citation omitted). Accordingly, Class Representatives respectfully submit the Plan of Allocation is fair and rational because it treats Class Members equitably while taking into account the weaknesses of claims by non-U.S. Class Members under *Morrison* and *Berbel*, *supra,* and therefore warrants the Court's approval.

## V.   THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE SETTLEMENT CLASS

   The Stipulation defines the Class for purposes of the Settlement only as follows:

> [A]ll persons and entities who owned, either as a record or beneficial owner, one or more shares of Linkwell common stock as of the close of business on September 19, 2014, who did not vote to approve the Merger between Linkwell and Leading World Corporation, whose shares were canceled as a result of the Merger between Linkwell and Leading World Corporation, and were allegedly damaged thereby.

Stipulation ¶ 7. Excluded from the Class are Bian and Guan; Sidley and its employees and agents; Yinling, Leading First, Leading World Corporation, and their subsidiaries and affiliates; all Linkwell shareholders who voted to approve the Merger, and all persons who make a timely request to opt-out of the Settlement. *Id*. The foregoing Class has been provisionally certified. *See* Preliminary Approval Order at 2.

Class Representatives respectfully request that the Court grant final certification of the Settlement Class. "A class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006) (internal quotation marks omitted). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Class certification is appropriate where: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Certification of a class seeking monetary compensation also requires a showing that "questions of law and fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In the Preliminary Approval Order, this Court previously found the requirements of Rule 23(a) and 23(b)(3) were satisfied for the Class defined in the Stipulation. *See* Preliminary Approval Order at 2. As the Class definition has not changed since preliminary approval, there is no reason for this Court to depart from its previous findings that certification of the Class is warranted.

As the Court previously recognized, the numerosity requirement of Rule 23(a) is easily satisfied. In the Eleventh Circuit, the general rule is that "less than twenty-one [members of the proposed class] is inadequate, more than forty adequate." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986), *cert. denied*, 479 U.S. 883 (1986) (quotation and citation omitted). *See also Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area"); *Cnty. of Monroe v. Priceline.com, Inc.*, 265 F.R.D. 659, 667 (S.D. Fla. 2010) (putative class of 59 Florida counties was "presumptively large enough" for numerosity and their "geographic dispersion also militates in favor of a finding that joinder is impracticable"). Here, Class Members are the non-insider shareholders of a former public company that received no notice of the Merger and/or did not vote to approve it and suffered injury as a result. There are hundreds of Linkwell shareholders throughout the United States and abroad who collectively owned 200,492

17

shares of Linkwell stock as of September 19, 2014. Krasner Decl. ¶¶ 18, 48. Accordingly, joinder is impracticable and the element of numerosity is satisfied.

The element of commonality is also satisfied because there are multiple questions of law and fact common to the Class involving Defendants' course of conduct in connection with the Merger.[7] *See, e.g.*, *Walco Inv., Inc. v. Thenen*, 168 F.R.D. 315, 325 (S.D. Fla. 1996) (finding commonality based on unified scheme to defraud investors); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 673-74 (S.D. Fla. 2011) ("[W]here a common scheme of deceptive conduct has been alleged, the commonality requirement should be satisfied.") (internal quotations omitted). In addition, all Class Members have been subject to the same alleged conduct and all have suffered the same injury as a result; namely, the divestiture of their shares of Linkwell common stock through an unfair process and at an unfair price. All Class Members' claims are based on the same legal theories and will rise or fall on the basis of common proof. Given these common issues subject to common resolution, this requirement is met.

For similar reasons, Class Representatives' claims are reasonably coextensive with those of absent Class Members such that the typicality requirement under Rule 23(a)(3) is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members"). Class Representatives' claims are virtually indistinguishable from those of the Class. Class Representatives, like all Class Members, assert claims that involve the alleged misconduct by Defendants, arise from the same legal theories, and concern the same type of harm and entitlement to relief. All Class Members will equally benefit from the relief provided by the Settlement. Thus, the typicality requirement is also satisfied.

---

[7] *See* Complaint ¶ 197 (listing common questions of law and fact: (i) whether the federal securities law were violated by Defendants' acts as alleged herein; (ii) whether Defendants, by their direct involvement and participation in the scheme to cause the forced sale of Linkwell stock owned by Class Members without any notice, employed a scheme to defraud, or engaged in acts, practices, or a course of conduct which operated as a fraud or deceit in connection with the sale of Class Members' Linkwell stock; (iii) whether Defendants breached their fiduciary duties and/or aided and abetted breaches of fiduciary duties to Class Members as alleged herein; (iv) whether Defendants conspired to acquire 100% of the equity of Linkwell through an unlawful and unfair process; and (v) whether $0.88 per share was fair value for the Linkwell stock owned by Class Members).

Class Representatives also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to: (1) whether the proposed class representatives have interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake the litigation. *Fabricant v. Sears Roebuck & Co.*, 202 F.R.D. 310, 314 (S.D. Fla. 2001). The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Emp. Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation and citation omitted). Class Representatives' interests are coextensive with, and not antagonistic to, the interests of the Class, because Class Representatives and absent Class Members have an equally great interest in the relief offered by the Settlement, and absent Class Members have no diverging interests. Further, Class Representatives are represented by qualified and competent counsel with extensive experience and expertise prosecuting complex class actions, including securities actions similar to this case.[8] Class Counsel have devoted substantial time and resources to vigorous litigation of the Action from inception (and indeed, from inception of the prior Derivative Action) through the date of the Settlement.

With respect to predominance, Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each 'elemen[t] of [their] claim [is] susceptible to classwide proof,'" just "that common questions 'predominate over any questions affecting only individual [class] members.'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 469 (2013) (citation omitted). "'Predominance is a test readily met in certain cases alleging… securities fraud.'" *City of Los Angeles*, 2016 U.S. Dist. LEXIS 115071, at *9 (quoting *Amchem*, 521 U.S. at 625).

Here, common questions of law and fact predominate over individual questions because Defendants' alleged acts and omissions in connection with the Merger affected all Class Members in the same manner. *See, e.g., Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983);

---

[8] Wolf Haldenstein is a nationally recognized firm that has both successfully litigated numerous securities fraud and complex class action cases and has dedicated substantial time and resources to the prosecution of the Action. *See* Krasner Decl. ¶ 62, Ex. 1 (Wolf Haldenstein firm resume).

*Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 724-25 (11th Cir. 1987); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1258-59 (11th Cir. 2004); *Walco*, 168 F.R.D. at 333 (all finding common questions predominate in lawsuits suit involving a single, common fraudulent scheme and that class certification is appropriate). Moreover, in the circumstances of this case reliance is also susceptible to class-wide proof. *See Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972). Applied here, the presumption dispenses with the requirement that each Class Member prove individual reliance on Defendants' alleged omissions. Finally, Class Members each suffered the same alleged injury – the forced sale of their Linkwell common stock, without notice, at an allegedly unfair price of $0.88 per share.

Finally, a class action is superior where it serves the primary goals of Rule 23, namely, "economies of time, effort, and expense," without sacrificing fairness. *See Amchem,* 521 U.S. at 615. "It is well established that class actions are a particularly appropriate means for resolving securities fraud actions." *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 489 (S.D. Fla. 2003) (internal quotations and citation omitted).

Accordingly, the requirements of both Rule 23(a) and Rule 23(b)(3) are manifestly satisfied. The Court should therefore grant final certification of the Settlement Class.

## VI.    CONCLUSION

For the reasons set forth above, Class Representatives respectfully request that the Court issue an Order substantially in the form of the proposed Final Judgment and Order Approving Settlement and Dismissing the Action with Prejudice:[9] (i) granting final approval of the Settlement; (ii) approving the Plan of Allocation; (iii) granting final certification of the Class for settlement purposes; (iv) entering final judgment dismissing the Action; and (v) granting such other and further relief as the Court deems just and proper.

---

[9] *See* Stipulation, Ex. D.

## <u>CERTIFICATE OF GOOD FAITH CONFERENCE</u>

Pursuant to Local Rule 7.1(a)(3), the undersigned hereby certify that they have conferred in good faith with counsel for Settling Defendants Xuelian Bian, Wei Guan, and Sidley Austin LLP to resolve the issues raised in this motion and state that they do not oppose the relief sought.

Dated: October 15, 2019

**FISCHLER & FRIEDMAN, P.A.**

By:    /s/ Michael A. Fischler
Michael A. Fischler
Attorney Bar Number: 255531
1000 South Andrews Avenue
Fort Lauderdale, FL 33316
(954) 763-5778
michael@ffpa-law.com

**WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP**
Charles J. Hecht
Daniel W. Krasner
Malcolm T. Brown
Daniel Tepper
270 Madison Avenue
New York, NY 10016
(212) 545-4600
hecht@whafh.com
krasner@whafh.com
brown@whafh.com
tepper@whafh.com

*Attorneys for Class Representatives
Julie Siegmund and Seth Lipner*

/806230

21

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2019, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using the CM/ECF system thereby causing electronic notice of the same to be provided to all counsel of record.

/s/ Michael A. Fischler, Esq.
Michael A. Fischler
Attorney Bar Number: 255531