UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-cv-62506 (FAM) (LFL)

JULIE SIEGMUND and SETH LIPNER, as
Successor Co-Trustees of THE FREDERICK
SIEGMUND LINKWELL CORP. CLAIMS
LIVING TRUST DATED JULY 31, 2018,
Individually and on Behalf of All Others
Similarly Situated,

                              Plaintiffs,

        v.

XUELIAN BIAN, WEI GUAN,
SIDLEY AUSTIN LLP, SHANGHAI YINLING
ASSET MANAGEMENT CO., LTD., LEADING
FIRST CAPITAL LIMITED and LEADING
WORLD CORPORATION,

                              Defendants.
_____/

**CLASS COUNSEL'S MOTION FOR AWARD OF
ATTORNEYS' FEES AND EXPENSES AND SERVICE
<u>AWARD AND INCORPORATED MEMORANDUM OF LAW</u>**

<div style="margin-left:50%">

Michael A. Fischler
**Fischler & Friedman, P.A.**
1000 South Andrews Avenue
Fort Lauderdale, Florida 33316

Charles J. Hecht
Daniel W. Krasner
Malcolm T. Brown
Daniel Tepper
**Wolf Haldenstein Adler
 Freeman & Herz LLP**
270 Madison Avenue
New York, New York 10016

</div>

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................... 1

II. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE........................................... 6

   A. Class Counsel is Entitled to an Award of Attorneys' Fees From the Common Fund ........ 6

   B. The Requested Attorneys' Fees are Reasonable as a Percentage of the Common Fund .... 6

   C. The Fee Request is Supported by the Relevant *Johnson* Factors ...................................... 8

      1. The Amount Involved and the Results Obtained ......................................................... 8

      2. The Novelty and Difficulty of the Legal and Factual Issues ...................................... 9

      3. The Skill Requisite to Perform the Legal Service Properly and the Experience, Reputation and Ability of Counsel ............................................................................ 10

      4. The Time, Labor and Effort Expended by Class Counsel ......................................... 11

      5. The Contingent Nature of the Fee Weighs in Favor of the Requested Award ........... 13

      6. The Undesirability of the Case ................................................................................. 14

III. THE REQUESTED EXPENSES ARE REASONABLE ...................................................... 14

IV. APPLICATION FOR CLASS REPRESENTATIVES' SERVICE AWARD ....................... 15

V. CONCLUSION................................................................................................................... 16

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                   **Page(s)**

*Allapattah Serv. Inc. v. Exxon Corp.,*
    454 F. Supp. 2d 1185 (S.D. Fla. 2006) ......................................................................15

*In re Altisource Portfolio Solutions, S.A. Sec. Litig.,*
    14-cv-81156, slip op. (S.D. Fla. May 30, 2017) ...........................................................5

*Anixter v. Home-State Prod. Co.,*
    77 F.3d 1215 (10th Cir. 1996) ...................................................................................13

*Behrens v. Wometco Enters. Inc.,*
    118 F.R.D. 534 (S.D. Fla. 1988), *aff'd,* 899 F.2d 21 (11th Cir. 1990) ..................5, 14

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980)...................................................................................................... 6

*Bonner v. City of Prichard,*
    661 F.2d 1206 (11th Cir. 1981) ...................................................................................4

*Camden I Condo. Ass'n v. Dunkle,*
    946 F.2d 768 (11th Cir. 1991) .....................................................................................6

*In re Checking Account Overdraft Litig.,*
    830 F. Supp. 2d 1330 (S.D. Fla. 2011) ..................................................................10, 14

*In re Checking Account Overdraft Litig.,*
    No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 187627 (S.D. Fla. Mar. 18, 2013).............13

*In re Checking Account Overdraft Litig.,*
    No. 1:09-MD-02036-JLK, 2013 U.S. Dist. LEXIS 190559 (S.D. Fla. Aug. 2, 2013) ...............6

*Cook v. Niedert,*
    142 F.3d 1004 (7th Cir. 1998) ...................................................................................15

*David v. American Suzuki Motor Corp.,*
    No. 08-cv-22278, 2010 U.S. Dist. LEXIS 146073 (S.D. Fla. Apr. 15, 2010)............................15

*Dowdell v. Apopka,*
    698 F.2d 1181 (11th Cir. 1983) .................................................................................14

*Faught v. Am. Home Shield Corp.,*
    668 F.3d 1233 (11th Cir. 2011) ...................................................................................4

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400, 2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 8, 2010) ............................ 5

*Gaskill v. Gordon*,
   942 F. Supp. 382 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998) ...................................... 7

*Gevaerts v. T.D. Bank N. A.*,
   No. 11:14-cv-20744, 2015 U.S. Dist. LEXIS 150354 (S.D. Fla. Nov. 5, 2015) ....................... 6

*Gutter v. E.I. Dupont De Nemours & Co.*,
   No. 95-2152-CIV, 2003 U.S. Dist. LEXIS 27238 (S.D. Fla. May 30, 2003) ............................ 6

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ................................................................................................................. 8

*Johnson v. Georgia Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) ............................................................................................. 4, 8

*In re Managed Care Litig.*,
   MDL No. 1334, 2003 U.S. Dist. LEXIS 27228 (S.D. Fla. Oct. 24, 2003) ................................ 7

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450 (S.D.N.Y. Feb. 1, 2007) ..................... 9

*Morrison v. Nat'l Australia Bank Ltd.*,
   561 U.S. 247 (2010) ............................................................................................................... 13

*Norman v. Hous. Auth. of Montgomery*,
   836 F.2d 1292 (11th Cir. 1988) ............................................................................................ 13

*Pinto v. Princess Cruise Lines*,
   513 F. Supp. 2d 1334 (S.D. Fla. 2007) .............................................................................. 8, 13

*Ressler v. Jacobson*,
   149 F.R.D. 651 (M.D. Fla. 1992) .............................................................................. 6, 8, 13, 14

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) .............................................................................. 10, 11, 13

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
   297 F.R.D. 683 (S.D. Fla. 2014) ............................................................................................ 9

*Seaman v. Duke Univ.*,
   No. 1:15-cv-462, slip op. (M.D.N.C. Sept. 25, 2019) ........................................................... 7

*Spicer v. Chi. Bd. Options Exch. Inc.*,
    844 F. Supp. 1226 (N.D. Ill. 1993) ........................................................................15

*In re Sunbeam Sec. Litig.*,
    176 F. Supp. 2d 1323 (S.D. Fla. 2001) ............................................................11, 14

*In re Takata Prods. Liab. Litig.*,
    MDL No. 2599, 2017 U.S. Dist. LEXIS 190972 (S.D. Fla. Oct. 31, 2017) ................7

*In re Terazosin Hydrochloride Antitrust Litig.*,
    No. 99-MDL-1317, 2005 U.S. Dist. LEXIS 43082 (S.D. Fla. Apr. 19, 2005)............6

*Thorpe v. Walter Inv. Mgmt. Corp.*,
    No. 1:14-cv-20880-UU, 2016 U.S. Dist. LEXIS 144133 (S.D. Fla. Oct. 14, 2016) .......... *passim*

*In re Vivendi Universal S.A. Sec. Litig.*,
    765 F. Supp. 2d 512 (S.D.N.Y. 2011)....................................................................13

*Waters v. Int'l Precious Metals Corp.*,
    190 F.3d 1291 (11th Cir. 1999) ...........................................................................5, 6

*Waters v. Cook's Pest Control, Inc.*,
    No. 2:07-cv-00394-LSC, 2012 U.S. Dist. LEXIS 99129 (N.D. Ala. July 17, 2012) .................7

*Wolff v. Cash 4 Titles*,
    No. 03-22778-CIV, 2012 U.S. Dist. LEXIS 153786 (S.D. Fla. Sept. 26, 2012)........6

## OTHER AUTHORITIES

Laarni T. Bulan, Ellen M. Ryan, & Laura E. Simmons, *Securities Class Action
Settlements 2015 Review and Analysis* at 9 (Cornerstone Research 2016) .....................................8

*Manual for Complex Litigation*, Fourth, § 14.121 ..........................................................6

Court-appointed Class Counsel Wolf Haldenstein Adler Freeman and Herz LLP and Florida counsel Fischler & Friedman, P.A., respectfully submit this motion for: (1) an award of attorney's fees in the amount of 33⅓% of the Settlement Fund[1] (or $2 million plus interest); (2) reimbursement of expenses that were reasonably and necessarily incurred in the prosecution of this Action in the amount of $407,846.77; and (3) a service award to the Frederick Siegmund Linkwell Corp. Claims Living Trust dated July 31, 2018 ("The Siegmund Trust") in the amount of $15,000. Settling Defendants Sidley Austin LLP, Xuelian Bian and Wei Guan take no position with respect to the relief sought in this motion.

## I.     INTRODUCTION

The Settlement is the outcome of almost three years of vigorous litigation following the Merger and subsequent dismissal of the Derivative Action brought on behalf of Linkwell for lack of standing. After the commencement of this Action, Defendant Sidley Austin LLP ("Sidley") moved to dismiss the complaint, which motion was granted. Following the filing of a First Amended Class Action Complaint ("Amended Complaint"), Settling Defendants moved to dismiss and their motions were, in substantial part, denied. After extensive document discovery including 28 discovery motions ruled upon by Magistrate Judge Louis; 12 depositions, including depositions of the parties' experts; and multiple mediation sessions and settlement negotiations that extended over a period of almost one year, the parties agreed to an all cash Settlement of $6 million.

The $6 million Settlement Amount is 12.5 times greater than the total consideration of $483,120 paid to Linkwell shareholders to acquire all of their stock in connection with the Merger. Before deducting Court-awarded attorneys' fees and expenses, Administration Expenses and Notification Costs, the estimated average recovery (assuming all eligible Class Members file valid claims valued at the full amount of the claim) will yield a recovery almost 34 times the

---

[1] Class Counsel respectfully refers the Court to the accompanying declaration of Daniel W. Krasner in Support of: Class Representatives' Motion for Final Approval of Class Settlement, Certification of Class, and Plan of Allocation; and Class Counsel's Motion for An Award of Attorneys' Fees and Expenses and Service Award ("Krasner Declaration" or "Krasner Decl.") for a detailed description of the allegations and procedural history of the Action, the efforts of Class Counsel, the risks of proceeding with the Action, and the terms of the Settlement. Unless otherwise noted, capitalized terms used herein have the meanings set forth in the Stipulation and Settlement Agreement dated May 1, 2019 (DE No. 295-1) (the "Stipulation").

$0.88 per share they received under the Merger.[2] The Settlement was achieved through the diligent efforts of Class Counsel, Class Representatives Julie Siegmund and Seth Lipner, and the late Frederick Siegmund who, even as his health was failing, continued to vigorously prosecute this Action and provided for its prosecution even after his death through the establishment of the Siegmund Trust.[3]

This Settlement represents a recovery of approximately 33% of the damages estimated by Class Representatives' damages expert Joseph W. Thompson, CPA, ASA, after he learned of the sale of 10% of Linkwell to an allegedly independent third party 17 months before the Merger closed, based upon which he valued damages to the Class at $18.27 million. The Settlement also represents over 78% of the fair value of Linkwell Corporation as of September 19, 2014 according to the rebuttal report of Settling Defendants' damages expert. Insofar as Class Members owned 200,492 (or approximately 37%) of the total 549,000 outstanding shares of Linkwell common stock at the time the Merger was approved, the Settlement represents in excess of 210% of the fair value of the Class's Linkwell shares based on the rebuttal report of Settling Defendants' damages expert.

The Settlement, although relatively small in comparison to the mega-settlements at times referred to in various reports, is a significant achievement given the size of Linkwell and the fact that 200,492 shares were held by Class Members at the time of the Merger. Moreover, the Settling Defendants include an international law firm of stellar reputation, and two foreign nationals who would be virtually judgment-proof because of the inability to collect a U.S. money judgment in the People's Republic of China, particularly when, as here, the judgment would have been the consequence of their failure to appear for deposition, which they claim would have been in violation of Chinese law.

The Settlement is particularly favorable when considered in light of the significant risks confronted in this Action. Throughout the pendency of this Action, Sidley raised substantial

---

[2] A Class Member's actual recovery will depend on several factors, including: (1) the number of claims filed; (2) the country of residence of Class Members; (3) the amount of Notification Costs and Administration Expenses; and (4) the amount of the Service Award and attorneys' fees and expenses awarded by the Court.

[3] Mr. Siegmund died on November 23, 2018. Class Representatives, the Co-Successor Trustees of the Siegmund Trust, were substituted in the Action for Mr. Siegmund pursuant to an Order (DE No. 284) on February 22, 2019.

challenges to Class Representatives' ability to both establish independent liability of Xuelian Bian ("Bian") and Wei Guan ("Guan"), as well as all the elements of the aiding and abetting breach of fiduciary duty claims and the amount of damages.[4] The challenges in prosecuting these claims is magnified by the fact that key documents reflecting various transactions in China were unavailable and testimony from key witnesses in China could not be obtained.[5]

In addition to the above, Class Representatives would have been required to establish the requisite culpability on the part of Sidley. Class Representatives would have had to establish that Sidley knew of Bian's and Guan's wrongdoing and substantially assisted the wrongdoing, not merely by performing routine legal services but by acting in such a way as to advance their breaches of fiduciary duty to the Class. This would have been difficult to prove given the lack of testimony from Bian and Guan and the documentary evidence susceptible to interpretation concerning the actual role played by Sidley in the dissemination of the Merger proxy statement and the failure by Linkwell to send the proxy statement to street name shareholders prior to the shareholders meeting and vote to approve the Merger.

Notwithstanding the obstacles described above, Class Counsel devoted all the necessary resources in terms of personnel and time, as well as significant expense in order to achieve a favorable result for the Class. Undaunted by the dismissal of the Derivative Action for lack of standing, Class Counsel immediately turned to the federal securities laws and a time-tested line of cases holding that a shareholder who was not given adequate notice of a pending merger has standing as a forced seller to assert securities law claims even though he did not take any action with respect to the merger.  Based on that legal theory, Class Counsel: (1) conducted a thorough factual investigation into the Class's claims relying in substantial part on the discovery obtained in the Derivative Action from Sidley, as well as other defendants, including securing documents from public Chinese sources including CNINFO; (2) drafted two detailed complaints based on the investigation and consultation with sources in China; (3) conducted extensive research

---

[4] While Class Representatives would have sought defaults against Bian and Guan for their failure to appear for deposition, Sidley nonetheless maintained that Class Representatives would have to establish through affirmative evidence that Bian and Guan were liable for breaches of fiduciary duty in order to establish liability for aiding and abetting.

[5] Since there were no available financial statements for Linkwell for the period of two years prior the Merger or for subsequent periods, the issue of damages was subject to significant dispute by the parties' experts. Further, because of the inability to obtain the testimony of Bian and Guan, amongst other parties in China, it was extremely difficult to establish a value for Linkwell.

regarding the applicable law; (4) briefed opposition to Settling Defendants' motions to dismiss; (5) researched and filed a motion for class certification; (6) briefed 28 discovery motions, including multiple motions to compel the attendance of Bian and Guan at their noticed depositions, as well as to compel production of documents from China and challenge various privileges and immunities asserted by Settling Defendants; (7) retained experts on damages and law firm liability as an aider and abettor; (8) engaged in hard-fought settlement negotiations, including two full day mediation sessions with Jed D. Melnick, Esq. of JAMS; (9) reviewed over 30,000 pages of documents produced by Settling Defendants; (10) conducted 9 depositions and defended 3 depositions, including depositions in New York, Miami, Texas, and Hong Kong. All of these efforts were undertaken on behalf of the Class, despite the fact that its size was limited (only approximately 200,000 shares) and despite the fact that a significant amount of time had been devoted to the Derivative Action, which time had to be written off when the dismissal of the Derivative Action was affirmed on appeal.[6]

It is against this backdrop that Class Counsel respectfully submits its request for a fee award of 33⅓% of the Settlement Fund.

The result of Class Counsel's efforts is an all cash Settlement of $6 million, which has been on deposit for the benefit of the Class since July 25, 2019. That entire sum will be used for the benefit of the Class, including all legal fees and expenses with the balance distributed to eligible Class Members. There will be no reversion to Settling Defendants of any portion of the Settlement Fund.

As discussed below, Class Counsel's application satisfies all of the relevant factors articulated in the Fifth Circuit's decision in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[7] *See also Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242-43 (11th Cir. 2011) (citing *Johnson, supra*). In addition, Class Counsel's and Florida counsel's lodestar of $3,017,847.50 far exceeds the requested fee. This lodestar does not include any time

---

[6] As set forth below, Class Counsel is not attributing any of the time devoted to the Derivative Action in its lodestar compilation and Class Counsel is only seeking reimbursement of *expenses* incurred in conducting certain discovery in the Derivative Action that was later used in this Action pursuant to a stipulation with Settling Defendants that discovery in the Derivative Action need not be replicated in this Action and that any documents produced or depositions conducted there could be used here as if they had been produced or depositions conducted in this Action.

[7] The Eleventh Circuit adopted the decisions of the Fifth Circuit issued prior to October 1, 1981 as binding precedent. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

devoted to this motion; nor does it include any time expended in the Derivative Action despite the fact that certain discovery obtained in the Derivative Action was later used in drafting the pleadings in this Action and the documents produced in the Derivative Action by Bian, Guan and Sidley were to be treated as if they were produced in this Action.

The lodestar cross check confirms that the requested fee is fair and reasonable. *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999). Under the lodestar cross check, the Court "consider[s] the number of hours worked by counsel and their customary hourly rates, and appl[ies] a multiplier to those hours in order to compensate attorneys for the risk undertaken and the quality of work done." *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 U.S. Dist. LEXIS 144133, at *20-21 (S.D. Fla. Oct. 14, 2016). *See Behrens v. Wometco Enters. Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Class Counsel and Florida counsel expended 4,151.7 hours with the resulting lodestar of $3,017,847.50 at their current billing rates in researching, investigating, prosecuting, and settling this Action. The hourly rates of Class Counsel here range from $545 to $980 for partners, $335 to $375 for associates, and $235 to $325 for paralegals. The hourly rates used in Class Counsel's lodestar calculation are reasonable given prevailing market rates for lawyers with comparable levels of experience and expertise in securities litigation and other complex class action litigation. *See, e.g., In re Altisource Portfolio Solutions, S.A. Sec. Litig.*, 14-cv-81156 (S.D. Fla. May 30, 2017) slip op. & DE No. 255-5 (at pp. 5-6 of 41), DE No. 255-6 (at p. 6 of 24), DE No. 255-7 (at p. 6 of 35) (approving award of attorneys' fees as fair and reasonable where hourly rates of plaintiffs' counsel ranged from $700 to $995 for partners, $375 to $600 for associates, and $245 to $325 for paralegals).

Unlike many cases before this Court in which class counsel seek a fee which exceeds their lodestar, the requested fee here is substantially less than total lodestar. Accordingly, the requested fee represents a negative multiplier of approximately .66. This fact further supports the reasonableness of the fee requested. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 U.S. Dist. LEXIS 119702, at *77 (S.D.N.Y. Nov. 8, 2010) ("[L]ead counsel's request for a percentage fee representing a significant discount from their lodestar provides additional support for the reasonableness of the fee request").

Thus, for the reasons set forth above and discussed below, Class Counsel respectfully requests that the requested fees, expenses and service award be approved by the Court.

## II.     THE REQUESTED ATTORNEYS' FEES ARE REASONABLE

### A.     Class Counsel is Entitled to an Award of Attorneys' Fees From the Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Eleventh Circuit has also determined that attorneys who create a common fund are entitled to be compensated for their efforts with a percentage of that fund. *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991).

### B.     The Requested Attorneys' Fees are Reasonable as a Percentage of the Common Fund

The Eleventh Circuit has found that an attorney's fee in a common fund case should be calculated as a reasonable percentage of the recovery received by the class. *Thorpe*, 2016 U.S. Dist. LEXIS 144133, at \*22. *See Manual for Complex Litigation*, Fourth, § 14.121 & nn.483-84 (compiling cases) ("[T]he vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common-fund cases."). The Court has "substantial discretion in determining the appropriate fee percentage awarded to counsel." *In re Checking Account Overdraft Litig.*, 2013 U.S. Dist. LEXIS 190559, at \*33 (S.D. Fla. Aug. 2, 2013). *See also Camden I*, 946 F.2d at 774-75; *Waters*, 190 F.3d at 1294.

As the Court noted in *Wolff v. Cash 4 Titles*, 2012 U.S. Dist. LEXIS 153786 (S.D. Fla. Sept. 26, 2012), "the average percentage award in the Eleventh Circuit mirrors that of awards nationwide – roughly one third." *Id.* at \*15-\*16 (compiling cases). Here, likewise, Class Counsel is requesting a fee of 33⅓% (one third), well within the boundaries of recent fee awards in common fund cases in this Circuit. *See Ressler v. Jacobson*, 149 F.R.D. 651, 655-56 (M.D. Fla. 1992) (*30% or more* of a settlement fund for attorney's fees is "not uncommon in §10(b) common fund cases"); *Waters*, 190 F.3d at 1291 (affirming a fee award of 33⅓%  of the settlement fund of $40 million); *Thorpe*, 2016 U.S. Dist. LEXIS 144133, at \*35 (awarding 33⅓% of the settlement fund of $24 million); *Gevaerts v. T.D. Bank N.A.*, 2015 U.S. Dist. LEXIS 150354, at \*27 (S.D. Fla. Nov. 5, 2015) (awarding 30% of a $20 million fund); *In re Terazosin Hydrochloride Antitrust Litig.*, 2005 U.S. Dist. LEXIS 43082 (S.D. Fla. April 19, 2005) (awarding 33⅓% of a $72.5 million settlement); *Gutter v. E.I. Dupont De Nemours & Co.*, 2003 U.S. Dist. LEXIS 27238 (S.D. Fla. May 30, 2003) (awarding fees of 33⅓%  of a $77.5

million settlement); *In re Managed Care Litig.*, 2003 U.S. Dist. LEXIS 27228, at \*15-\*18 (S.D. Fla. Oct. 24, 2003) (awarding $50 million in fees and costs in a settlement of $100 million in cash and certain non-monetary benefits); *In re Takata Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 190972, at \*126-\*29 (S.D. Fla. Oct. 31, 2017) (Moreno, J.) (awarding 30% of the settlement fund in first of many recoveries from various automotive manufacturers); *Seaman v. Duke Univ.*, No. 1:15-cv-462, slip op. at 5, 17 (M.D.N.C. Sept. 25, 2019) (awarding requested attorneys' fees of one third (33⅓%) of common fund) (Krasner Decl. Ex. 11); *Gaskill v. Gordon*, 942 F. Supp. 382, 387-88 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998) (finding 33% the norm but nevertheless affirming an award of 38% of the settlement fund).

The $2 million fee request here is reasonable given the highly favorable recovery to the Class (over 34 times what they received in the Merger) and considering the significant risks, complexities, and difficulties of this case.

Class Counsel prosecuted this Action for almost three years after the dismissal of the Derivative Action on standing grounds for which no compensation is requested. Indeed, Class Counsel is not requesting any fee or recognition for the time devoted to the Derivative Action, including the time devoted to analyzing the discovery from the Derivative Action that was subsequently used in this Action. *See, e.g., Waters v. Cook's Pest Control, Inc.* 2012 U.S. Dist. LEXIS 99129 at \*47 (N.D. Ala. July 17, 2012) ("Class Counsel accepted this matter on a contingent basis … [t]hroughout the years there has been a real possibility that class counsel would not recover anything for the class.").

To date there have been no objections to the fee request. Pursuant to this Court's July 12, 2019 Order of Preliminary Approval, more than 6,100 copies of the Notice were disseminated to potential Class Members which advises them, among other things, that Class Counsel will apply for an award of attorneys' fees in an amount not to exceed 35% of the Settlement Fund and expenses not to exceed $450,000. In addition to the Notice, the Summary Notice published in *Investor's Business Daily* and *The New York Times (International)* and transmitted over *PR Newswire* likewise advised potential Class Members of the application for an award of attorneys' fees and expenses. This lack of objection is further evidence of the fairness of the fee request, particularly in light of the fact that Class Counsel is requesting a fee less than the published and disseminated figure of 35%. A lack of objections from Class Members is considered evidence of

the fairness of the request. *See Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334, 1343 (S.D. Fla. 2007); *Ressler,* 149 F.R.D. at 656.

      **C.**    **The Fee Request is Supported by the Relevant *Johnson* Factors**

The following *Johnson* Factors likewise fully support the requested fee.[8]

      **1.**    **The Amount Involved and the Results Obtained**

The result achieved, *Johnson* Factor 8, is an important factor in determining an appropriate fee award.  In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Supreme Court held that in assessing the reasonableness of a fee, the "most critical factor is the degree of success obtained." *Id.* at 436. *See also Ressler,* 149 F.R.D. at 655 ("[O]ne of the primary determinants of the quality of the work is the result obtained.").

Here, while the Settlement Amount recovered is not one of the larger class recoveries in this District or otherwise, in terms of the disputed damages which ranged from over $18 million for Class Representatives' expert to zero for Settling Defendants' expert, it represents a significant percentage.[9] The amount recovered as a percentage of the amount in dispute was well above the norm for securities class actions. As set forth above, the Settlement represents a recovery of approximately 33% of the damages estimated to the Class. The $6 million Settlement Amount represents more than 30 times the amount Class Members received in the Merger, a most extraordinary result. In evaluating similar settlements or far smaller percentage recoveries than those here, courts have found such recoveries reasonable and "excellent." *See Thorpe,* 2016

---

[8] The *Johnson* Factors 5 and 12 regarding customary viewports in similar cases have been addressed in sections II.A and II.B above. The *Johnson* Factors 7 and 11 are not relevant here, *i.e.* the time limitations imposed by the client and the nature and the length of the professional relationship with the client. *Johnson* Factor 4, the preclusion of other employment due to the acceptance of the case at hand, would not ordinarily apply except for the fact that, as detailed herein and in the Krasner Declaration, the Court initially set a very tight schedule for completing pretrial discovery and related proceedings and subsequently granted only relatively short extensions of time to complete those tasks at the very end of the initial cutoff date. The short deadline extensions essentially required Class Counsel to put aside all other work in order to complete the discovery required, including expert reports and expert depositions. This factor favors the award requested.

[9] *Compare, e.g.,* Laarni T. Bulan, Ellen M. Ryan, & Laura E. Simmons, *Securities Class Action Settlements 2015 Review and Analysis* at 9 (Cornerstone Research 2016) (finding median security settlements in the years 2006 to 2014 recovered 2.8% of estimated damages or a damages range between $125 million and $250 million and only 1.7% of estimated damages in that range in 2015).

U.S. Dist. LEXIS 144133, at *9; *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 2007 U.S. Dist. LEXIS 9450 (S.D.N.Y. Feb. 1, 2007). *See also Saccoccio v. JP Morgan Chase Bank, N.A.,* 297 F.R.D. 683, 693 (S.D. Fla. 2014) (Moreno, J.) (citing *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011)) (a recovery of between 9% and 45% was an "exemplary result").

### 2.    The Novelty and Difficulty of the Legal and Factual Issues

*Johnson* also recognizes that the novelty and difficulty of the issues in the case are significant factors to be considered in making a fee award. Those factors clearly support the fee award requested here. *See Thorpe*, 2016 U.S. Dist. LEXIS 144133, at *26 (internal quotations and citations omitted) ("Class Representatives faced all the multifaceted and complex legal questions endemic to cases based on alleged violations of federal securities law. Moreover, securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA"). As set forth above and in the Krasner Declaration, this Action had many unusual factual and legal challenges which were, even for a securities case, most difficult to overcome.

First, beyond the general complexities of securities cases, most if not all of the relevant events related to the challenged Merger occurred in China. Documents and testimony regarding, among other things, the reasons for the sale of 100% of the equity of Linkwell to Shanghai Yinling Asset Management Co., Ltd., financial statements establishing the value of Linkwell at the time the Merger was approved, and the process by which the Merger was approved and consummated were difficult to obtain. Other parties that might possess relevant evidence resided in China and could not be served with process or subpoenaed to provide that evidence. Indeed, Bian and Guan, as China residents, were reluctant to appear and provide testimony in this Action because, in their view, doing so was contrary to the law of the People's Republic of China prohibiting depositions for use in foreign courts. Certain documents that were produced were in Chinese and required translation. In some cases, the translation of such documents was subject to dispute and could not be elaborated upon without the aid of live testimony.

Second, nuanced legal and factual issues existed as to whether Class Representatives could establish that Bian and Guan owed a fiduciary duty to Class Members in connection with the Merger, and had alleged an actionable scheme to defraud and the requisite intent. For example, Bian and Guan contended that because they resigned their positions as directors and officers before the Merger, they did not breach any duty to Class Members. They also argued

that they were not controlling shareholders of Linkwell. With respect to the *prima facie* elements of the securities fraud claim, Bian and Guan contended that there was no direct evidence of a scheme, a deceptive or manipulative act in furtherance thereof, or scienter. These issues were further complicated by the fact that Bian and Guan had not yet made themselves available for deposition and that other relevant witnesses in China were not subject to subpoena.

Legal and factual issues also existed as to whether Class Representatives had alleged actionable claims against Sidley. Sidley disputed the existence of any evidence to prove that it: (i) had knowledge of any alleged breach of fiduciary duty by Bian or Guan in connection with the Merger; or (ii) substantially assisted or participated in the alleged wrongdoing. In addition, Sidley took the position that Class Representatives were precluded from establishing that Bian and Guan owed fiduciary duties to Class Members in connection with the Merger in light of their purported resignations from Linkwell. It further contended that Bian and Guan were not controlling shareholders of Linkwell Corporation and, thus, could not have breached any duty to Class Members related to the Merger.

Third, even if Class Representatives prevailed on the claims against Bian and Guan, the likelihood of actual recovery on those claims remained highly questionable insofar as any judgment obtained in this Action against Bian and Guan would not be recognized or enforced in China.

Finally, the risks inherent in securities litigation justify this fee request. *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict obtained by Wolf Haldenstein as co-lead counsel after 19-day trial and dismissing case with prejudice).

### 3. The Skill Requisite to Perform the Legal Service Properly and the Experience, Reputation and Ability of Counsel

Class Counsel has extensive experience prosecuting securities class actions and other complex litigation. *See* Krasner Decl., Ex. 1 (Firm Resume). That experience and skill was demonstrated by the efficient and effective prosecution of this Action for almost three years culminating in this Settlement. *See In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d at 1359 (emphasis added) ("Class counsel took on a great deal of risk in bringing this case and turned a potentially empty well into a significant judgment. *That kind of initiative and skill must be adequately compensated to ensure that counsel of this caliber is available to undertake these kinds of risky but important cases in the future.*").

The quality of opposing counsel is also important in evaluating the quality of services rendered by Class Counsel. *See In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1334 (S.D. Fla. 2001) ("[I]n assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced."). Settling Defendants were represented in this case by skilled counsel well known for their determined and effective litigation practices, particularly in this District. Holland & Knight and Fowler White Burnett P.A. are well known to this Court. These firms spared no effort in vigorously defending their respective clients. Notwithstanding this formidable opposition, Class Counsel presented a strong case and demonstrated its willingness and ability to vigorously prosecute this Action through trial and inevitable appeals, which we believe helped to secure this Settlement.

Settlement negotiations continued for almost one year from the first mediation session in June of 2018 through the conclusion of negotiations in May of 2019. When the parties first met, their positions were far apart and it appeared unlikely that a resolution would be achieved. While the litigation continued at a rapid pace, the parties continued to negotiate and inched closer together until it appeared in the early spring that a settlement would be achieved with Sidley. Finally, in April of 2019, a resolution was reached between all parties. With a full agreement on the financial terms of the Settlement, the parties turned to the non-economic terms and negotiated the Stipulation and related documents which were executed on or about May 1, 2019. The determination of Class Counsel and willingness to take this matter to trial favorably influenced that final result.

### 4.      The Time, Labor and Effort Expended by Class Counsel

For almost three years, Class Counsel dedicated substantial time, effort, and financial resources to litigating this Action. As this Court is aware, this Action is the successor to the Derivative Action commenced by Mr. Siegmund in December 2012. The Derivative Action was ultimately dismissed as a consequence of the Merger that resulted in Mr. Siegmund no longer being a shareholder of Linkwell. This Action was commenced to challenge the Merger and, in particular, the alleged forced sale of the stock of Linkwell's public shareholders without due notice and for unfair value. The Settlement offers to Class Members a payment of almost 34 times what they received in the merger ($0.88 per share as opposed to $29.93 per share,[10]

---

[10] The $29.93 per share amount is an estimate. Class Members' actual recovery depends on a number of factors, including: (1) the number of claims filed; (2) the country of residence of Class

assuming all eligible Class Members file valid Proof of Claims and receive the full amount of their claims). That result was due exclusively to the efforts of Class Counsel.

From its very inception, this Action was litigated vigorously and with great determination. Class Counsel was in possession of discovery obtained in the Derivative Action related to the claims asserted in this Action. Nevertheless, further investigation was required in order to draft the initial pleadings. Linkwell ceased filing financial reports with the SEC in 2012, two years prior to the Merger. Class Counsel was able to obtain certain financial information from public filings in China, as well as the efforts of an investigator whom Class Counsel hired to conduct an investigation of Linkwell, both through actual visits to its facilities as well as various sources both public and private in China. The amended pleadings filed in this Action set forth many relevant facts that would not have been available but for these efforts.

After the amended pleading was largely sustained, the Court set a 9½-week schedule to complete all discovery. As a consequence, Class Counsel worked virtually full-time in an effort to meet that schedule. Discovery requests were served, responses to those requests were reviewed, document productions were analyzed, depositions were conducted, counsel met and conferred with respect to discovery disputes, and many motions were filed and argued. Three days prior to the discovery deadline, the Court extended the cutoff date to September 7, 2018. Class Counsel continued to vigorously prosecute the Action to meet this deadline. Before the close of discovery, Class Counsel moved for class certification and Defendants' counsel filed motions for summary judgment. During this time, the parties also filed motions with respect to outstanding discovery disputes.

Class Counsel and Florida counsel devoted substantial resources and time prosecuting this action over the past three years. Class Counsel and Florida counsel expended 4,151.7 hours prosecuting this action and spent $407,846.77 in out-of-pocket costs litigating this case. A significant amount of the financial resources expended were payments to experts, China counsel and investigators, as well as for travel in the United States and Hong Kong to depose fact and expert witnesses and appearances before the Court. The case could not have been successfully settled but for the devotion of attorney time and resources to prosecute this Action.

---

Members; (3) the amount of Notification Costs and Administration Expenses; and (4) the amount of the Service Award and attorneys' fees and costs awarded by the Court.

5.     **The Contingent Nature of the Fee**
       **Weighs in Favor of the Requested Award**

The "customary fee" in a class action lawsuit of this nature is a contingency fee because no individual or institution generally possesses a sufficiently large stake in the outcome of the litigation to justify paying attorneys on an hourly basis. *See Ressler,* 149 F.R.D. at 654; *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). As held in *Thorpe*, "the courts should give substantial weight to the contingent nature of class counsel's fees when assessing the fee request." 2016 U.S. Dist. LEXIS 144133, at *30. *See In re Checking Account Overdraft Litig.*, 2013 U.S. Dist. LEXIS 187627, at *107 (S.D. Fla. Mar. 18, 2013) ("Public policy concerns – in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs – support the requested fee here."); *Pinto,* 513 F. Supp. 2d at 1339 (internal quotations omitted) ("attorney's risk is perhaps the foremost factor in determining an appropriate fee award.").

Class Counsel prosecuted this action on a wholly contingent basis and bore all the risks of litigating the case through trial and possible appeals. This risk was heightened further when this Court dismissed the initial complaint. If it had not been clear at the inception of this case that Class Counsel was engaged in an expensive and potentially lengthy litigation which would require the investment of hundreds of thousands of dollars in disbursements and thousands of hours of attorneys' time with no guarantee of ever being compensated for that investment, it certainly became very clear after the first pleading was dismissed. Even after the second pleading was sustained, the extremely tight discovery schedule made apparent that the Action would be litigated at rapid pace.

The risks attendant in contingent fee litigation are highlighted by the fact that from time to time there are dramatic changes in the law that can result in the dismissal of a lawsuit even after significant time and expense. As Class Counsel is fully aware, even the best pleaded and litigated cases can ultimately come to an unanticipated loss when appellate courts see things differently. *See, e.g., Robbins, supra*; *Anixter v. Home-State Prod. Co.,* 77 F.3d 1215 (10th Cir. 1996); *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010); *In re Vivendi Universal S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 524, 533 (S.D.N.Y. 2011).

Thus, even when class counsel devotes the time and resources necessary to achieve a favorable result, a successful outcome is not guaranteed. Consequently, the risk undertaken here weighs in favor of approving this fee request given the risks described above.

### 6.      The Undesirability of the Case

Finally, the undesirability of the case also supports the requested fee. Class Counsel undertook the prosecution of a highly complex action on a fully contingent basis knowing that it would have to spend substantial time and resources. *See In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1336 (Undesirability "could be due to any number of things including social opprobrium surrounding the parties, thorny factual issues, or the possible financial outcome of the case."). Indeed, the risk of non-recovery or underpayment and the undertaking of complex litigation on a contingent fee "often justifies an increase in the award of attorneys' fees." *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d at 1364 (quoting *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1335). *See Behrens*, 118 F.R.D. at 548 (same).

## III.    THE REQUESTED EXPENSES ARE REASONABLE

In addition to the attorneys' fee requested, Class Counsel respectfully seeks reimbursement of $407,846.77 in litigation expenses which Class Counsel and Florida counsel reasonably and necessarily paid in connection with investigating, prosecuting, and resolving the claims in the Action.  These expenses are itemized in the declarations of Class Counsel and Florida Counsel, submitted herewith and are properly sought. Both outside expenses and certain in-house charges are properly recovered by Class Counsel.  *See, e.g., Ressler,* 149 F.R.D. at 657; *Dowdell v. Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983) ("all reasonable expenses incurred in case preparation during the course of litigation or as an aspect of settlement of the case" may be recovered).

The expenses for which Class Counsel seek reimbursement are the type of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. Specifically, the expenses sought include charges for:

i) Investigating the facts underlying the claims alleged in the complaint;

ii) Online factual and legal research;

iii) Retaining experts on damages and liability of attorneys for aiding and abetting wrongful conduct and legal and factual matters in China;

iv) The cost of mediation;

v) Secretarial overtime, travel expenses, the cost of deposition transcripts, copying and the like.

All these expense items are billed separately by Class Counsel and are not duplicated in the firms' billing rates.

The notices inform potential class members that Class Counsel would apply for reimbursement of expenses in an amount not to exceed $450,000. The total amount of expenses requested is below that amount and to date there have been no objections to the request.

## IV.   APPLICATION FOR CLASS REPRESENTATIVES' SERVICE AWARD

Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Serv. Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006). "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp.*, 2010 U.S. Dist. LEXIS 146073, at *19 (S.D. Fla. April 15, 2010). *See Spicer v. Chi. Bd. Options Exch. Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving service awards ranging from $5,000 to $100,000).

The factors for determining a service award include:

i) the actions undertaken to protect the interests of the Class;

ii) the degree to which the Class benefited from those actions;

iii) the amount of time and effort expended in pursuing the litigation. *See, e.g., Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

The above factors as applied here demonstrate the reasonableness of the service award of $15,000 to the Siegmund Trust.  Mr. Siegmund, who also served as the plaintiff in the Derivative Action, devoted more than 49 hours to the prosecution of this action alone excluding the time he devoted to the derivative action (*see* Declaration of Julie Siegmund filed herewith). Mr. Siegmund assisted in the preparation of the original and amended pleadings, and consulted with Class Counsel throughout the pendency of this Action, almost until the very day of his death on November 23, 2018. He participated in the first mediation which he attended in person. He sat for his deposition, which went on for 4.5 hours. He spent many hours preparing for the deposition and subsequently reviewed and signed the transcript. He attended the second mediation by phone given his declining health. Mr. Siegmund was there at every phase of this Action.  Consequently, it is only fair that the Siegmund Trust be compensated for his service.

## V.     CONCLUSION

The settlement of this Action is the culmination of the diligent work and skillful efforts of Class Counsel.  For above stated reasons, the motion should be granted.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3), the undersigned hereby certify that they have conferred in good faith with counsel for Settling Defendants Xuelian Bian, Wei Guan and Sidley Austin LLP to resolve the issues raised in this motion and state that they take no position with respect to the relief sought.

Dated: October 15, 2019

**FISCHLER & FRIEDMAN, P.A.**

By:        /s/ Michael A. Fischler
Michael A. Fischler
Attorney Bar Number: 255531
1000 South Andrews Avenue
Fort Lauderdale, FL 33316
(954) 763-5778
michael@ffpa-law.com

**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
Charles J. Hecht
Daniel W. Krasner
Malcolm T. Brown
Daniel Tepper
270 Madison Avenue
New York, NY 10016
(212) 545-4600
hecht@whafh.com
krasner@whafh.com
brown@whafh.com
tepper@whafh.com

*Attorneys for Class Representatives
Julie Siegmund and Seth Lipner*

/805468

16

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2019, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using the CM/ECF system thereby causing electronic notice of the same to be provided to all counsel of record.

/s/ Michael A. Fischler, Esq.

Michael A. Fischler

Attorney Bar Number**:** 255531